Celia SANCHEZ, Plaintiff-Appellant,

v.

STANDARD BRANDS, INC., Defendant-Appellee.

No. 27730.

United States Court of Appeals, Fifth Circuit.

July 1, 1970.

Rehearing Denied and Rehearing En Banc Denied Aug. 17, 1970.

Frank P. Hernandez, Dallas, Tex., for plaintiff-appellant.

Eldon L. Youngblood, Coke & Coke, Dallas, Tex., for defendant-appellee.

Philip Sklover, Atty., Equal Employment Opportunity Commission, Washington, D.C., amicus curiae.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge.

In this equal employment opportunity action we consider the linguistic tolerance to be accorded a charging party under the 1964 Civil Rights Act and its attendant regulations. The court below dismissed the complaint on the ground that plaintiff had written the wrong words and checked the wrong box in filling out an administrative charge form supplied by the Equal Employment Opportunity Commission. Because we conclude that the trial court's approach is not in keeping with the words of the statute, with the intent of Congress, or with the regulations adopted by the EEOC, we reverse and remand.

### I.

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. Title VII generally forbids, in the context of employment, discrimination against any individual "because of such individual's race, color, religion, sex, or national origin." The Act's proscriptions are directed at employers, employment agencies, and labor organizations, each of which is forbidden to engage in certain defined "unlawful employment practices." See 42 U.S.C.A. §§ 2000e—2, 2000e—3.

To effectuate the goals embodied in Title VII, Congress created the Equal Employment Opportunity Commission. 42 U.S.C.A. § 2000e—4. The Commission's procedures can be set in motion by the filing of a charge of discrimination. The procedures which are triggered by the filing of such a charge are detailed in 42 U.S.C.A. § 2000e—5, which provides in pertinent part as follows:

"(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the 'respondent') with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

\* \* \* \* \* \*

"(e) If * * * the Commission [is] unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * * by the person claiming to be aggrieved * * *."

In addition to the requirements that a charge of discrimination filed by an aggrieved party be "in writing" and "under oath," 42 U.S.C.A. § 2000e—5(a), the statute commands that such a charge "shall be filed within ninety days after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e—5(d). Beyond these basics the Act is silent with respect to the details of filing a charge of discrimination. The Commission, however, has issued a series of regulations concerning the filing of charges. 29 C.F.R. § 1601.5 et seq. The regulation with which we are principally concerned in the present case is 29 C.F.R. § 1601.11, which provides as follows:

"(a) Each charge should contain the following:

(1) The full name and address of the person making the charge.

(2) The full name and address of the person against whom the charge is made (hereinafter referred to as the respondent).

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practice.

(4) If known, the approximate number of employees of the respondent

employer or the approximate number of members of the respondent labor organization, as the case may be.

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local authority charged with the enforcement of fair employment practice laws, and, if so, the date of such commencement and the name of the authority.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is deemed filed when the Commission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date. However, an amendment alleging additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the original charge will be permitted only where at the date of the amendment the allegation could have been timely filed as a separate charge."

Another Commission regulation provides that a charge of discrimination "shall be in writing and signed, and shall be sworn to before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments." 29 C.F.R. § 1601.8. The same regulation announces that "[c]harge forms are available to all persons from all offices of the Commission."

The Commission's charge form is a relatively simple one-page form, obviously designed to be utilized by even the most unsophisticated and unlettered layman. Three specific portions of the form are relevant for purposes of this case. One portion calls for an explanation of the factual basis of the charge of discrimination; the complainant is asked to "explain what unfair thing was done to you." Another part of the form calls for the complainant to specify whether the discrimination alleged was "because of" (a) "race or color," (b) "religious creed," (c) "national origin" or (d) "sex"; a row of boxes is provided—one for each category of discrimination—and the complainant is asked to "please check one." Still another portion of the form asks the complainant to state "the most recent date on which this discrimination took place."

The history of the present litigation began when Celia Sanchez, on January 3, 1967, filed a charge of discrimination with the EEOC by executing an EEOC charge form. She named her former employer, Standard Brands, Inc., as the party which had discriminated against her. In the space provided to explain what "unfair thing" had been done to her, she wrote the following:

"My complaint was that my boss lady hit me at my rear end and about a month before that I hurt my thumb and was out of work for seven days and the Company didn't pay me. I hurt my thumb at work."

In the row of boxes representing the various categories of discrimination, she checked the box labeled "sex." In the space provided to state "the most recent date on which this discrimination took place," she wrote "November 18, 66." Thus, this charge of discrimination, filed in January of 1967, clearly was filed within the ninety-day period prescribed by 42 U.S.C.A. § 2000e—5(d).

However, on March 18, 1967—after the expiration of the ninety-day period —Celia Sanchez executed an amended charge of discrimination, again utilizing the charge form supplied by the Commission. Once again she fixed "the most recent date on which this discrimination took place" as November 18, 1966. In other relevant respects, however, this charge was not identical with the original charge. This time, in the

space provided to explain what "unfair thing" had been done to her, she wrote the following:

"AMENDED

"I was discriminated against by Standard Brands, Inc. because of my national origin and sex. My supervisor became very abusive toward me and constantly harrassed [sic] me on my job. She would rush me and one day she caused me to hurt my thumb. I lost 7 days of work and the company would not pay me for my lost time. On another occasion my Supervisor struck me on my buttocks with her hand and accused me of doing my work wrong, rather than argue with her I told her husband [the plant manager] I was going home. When I returned the next day my supervisor told me she did not need me any more and fired me. My supervisor seemed most [sic] abrupt and vengeful against Negro and Mexican American women than with Anglo women."

In the row of boxes representing the various categories of discrimination, she checked two boxes—both "sex" and "national origin."

The Commission investigation triggered by the Sanchez charge apparently led the Commission to conclude that reasonable cause did *not* exist to believe that Standard Brands had been guilty of discrimination because of *sex*, but that reasonable cause *did* exist to believe that Standard Brands had been guilty of discrimination because of *national origin*. The Commission was unable, however, to obtain voluntary compliance with the Act. Consequently, Celia Sanchez was notified of her statutory right to bring a civil action to compel compliance, and on August 12, 1967, she filed her complaint in the court below.

In her complaint plaintiff sought relief for herself and for the class she claimed to represent, the class being composed of "Mexican-American and Negro persons who are employed, or might be employed by Standard Brands, Inc., at its Frozen Products Division lo-

cated in Dallas, Texas, who have been and continue to be or might be adversely affected by the practices complained of herein." The complaint alleged the following unlawful employment practices:

"The Defendant has established a system, the design, intent and purpose of which is to continue and preserve and which has the effect of continuing and preserving, the Defendant's policy, practice, custom and usage of limiting the employment and promotional opportunity of Mexican-Americans and Negro employees of the Corporation because of race or color. The system has the design, intent and purpose of having the minority group employees do all of the clean-up duty and that said duty was not and is not prorated and is always done by minority group employees.

"The Defendant, by and through the supervisor of the Plaintiff has subjected the Plaintiff and other Mexican-American and Negro persons to continuous general harassment and threats."

In her prayer for relief plaintiff sought an injunction in broad terms, asking the court to

"[g]rant Plaintiff and the class she represents a preliminary and permanent injunction enjoining the Defendant, Standard Brands, Inc., his agents, successors, employees, attorneys, and those acting in concert with them and at their direction from continuing or maintaining the policy, practice, custom and usage of denying, abridging, withholding, conditioning, limiting or otherwise interfering with the rights of Plaintiff and others similarly situated to enjoy equal employment opportunity as is given by Title VII of the Act known as 'The Civil Rights Act of 1964,' 42 U.S.C. Sec. 2000e et seq. and 42 U.S.C. of Sec. 1981 without discrimination on the basis of race or color or national origin, including but not limited to the maintenance of any policy, practice, custom or usage of harassing, threatening and mistreating employees, and discriminating

against said employees because of race or color or national origin with respect to compensation, terms, conditions and privileges of employment."

In addition, she sought reinstatement as an employee of Standard Brands and the payment of "back wages from the time of Defendant's termination of Plaintiff to the present time."

Standard Brands responded with a motion to dismiss the complaint on the ground that allegations in the complaint had not been brought to the EEOC by way of a timely charge of discrimination. The trial court agreed in part with Standard Brands' position. The court ruled that since the *original* charge of discrimination (the charge filed on January 3, 1967) was the only charge which had been filed within ninety days of the discriminatory acts alleged, only that charge could serve as the basis for a valid complaint. The allegations in the *amended* charge (the charge filed on March 18, 1967) were therefore excluded by the court. Looking solely to the original charge, the court held that "certain of the allegations" in plaintiff's complaint were "beyond the scope of the [original] charge of discrimination." Accordingly, the court dismissed the complaint. Plaintiff was given leave to file an amended complaint within a specified period of time, with the proviso that such amended complaint

"shall be confined to allegations within the scope of the [original charge of discrimination]. Specifically, the said amended complaint shall be confined to allegations of discrimination based solely on sex, without reference to discrimination based on race, color, or national origin."

Thus pinioned to sex discrimination, but obviously desiring to stand on her allegations of discrimination based on national origin, plaintiff declined to amend her complaint. Thereupon the trial court dismissed her complaint with prejudice, and plaintiff appealed.

## II.

In deciding this appeal we note at the outset that the filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII. Dent v. St. Louis-San Francisco Railway Co., 5 Cir. 1969, 406 F.2d 399, 403; Choate v. Caterpillar Tractor Co., 7 Cir., 1968, 402 F.2d 357, 359; Oatis v. Crown Zellerbach Corp., 5 Cir. 1968, 398 F.2d 496, 497–498. As we have noted, two applicable time limits are set out in the statute. First, the charge of discrimination must be filed with the EEOC within ninety days of the occurrence of the alleged unlawful employment practice. 42 U.S.C.A. § 2000e—5(d). Secondly, the civil action must be filed within thirty days after the EEOC notifies the charging party that it has been unable to obtain voluntary compliance. 42 U.S.C.A. § 2000e–5(e). Beyond these fundamentals various procedural questions have arisen, partly because "the statute leaves much to be desired in clarity and precision." Cunningham v. Litton Industries, 9 Cir. 1969, 413 F.2d 887, 889; see Miller v. International Paper Co., 5 Cir. 1969, 408 F.2d 283, 286–287. In addition, the legislative history of Title VII is in such a confused state that it is of minimal value in its explication. See Dent v. St. Louis-San Francisco Railway Co., *supra*, 406 F.2d at 403; Johnson v. Seaboard Air Line Railroad Co., 4 Cir. 1968, 405 F.2d 645, cert. denied, Pilot Freight Carriers, Inc. v. Walker, 394 U. S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451.

The basic purposes of the Act, however, are clearly discernible. Mindful of the remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme,[1] courts

---

1. The importance of the private litigant in the context of Title VII cannot be overemphasized. His role assumes great significance because of the unusual nature of the EEOC. "Unlike so many Governmental structures in administrative law, [the] EEOC is an administrative agency without the power of enforce-

construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act. Consequently, courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party. For example, it has been held that a class action can be maintained under the Act even though only one member of the class has filed a charge of discrimination. Miller v. International Paper Co., *supra*; Oatis v. Crown Zellerbach Corp., *supra*. In a similar vein, it has been held that the statutory requirement that a charge of discrimination be "under oath" can be satisfied by verification *after* the expiration of the ninety-day period. Blue Bell Boots, Inc. v. EEOC, 6 Cir. 1969, 418 F.2d 355; Georgia Power Co. v. EEOC, 5 Cir. 1969, 412 F.2d 462; Weeks v. Southern Bell Telephone & Telegraph Co., 5 Cir. 1969, 408 F.2d 228; Choate v. Caterpillar Tractor Co., 7 Cir. 1968, 402 F.2d 357.

Nevertheless, despite the demonstrated unwillingness of the courts to erect procedural barricades in Title VII actions, Standard Brands offers a series of arguments in the present case which are premised on nothing more than legal technicalities. In essence Standard Brands advances two principal contentions. First, it is Standard Brands' position that since plaintiff checked only the box labeled "sex" when she executed her original charge of discrimination,

she is barred from including in her complaint allegations of national origin discrimination. Secondly, as an alternative argument Standard Brands contends that plaintiff's complaint contains factual allegations which were not included in either charge of discrimination and therefore cannot be the subject of her Title VII action.[2] Although these contentions have been cogently developed in Standard Brands' brief and on oral argument, we are unimpressed with the ultimate soundness of Standard Brands' position. On the contrary, we are compelled by both reason and precedent to reverse the judgment of dismissal entered in the court below and to remand for a trial on the merits.

In rejecting Standard Brands' arguments, we rely in part on the Commission's relation-back regulation, 29 C.F.R. § 1601.11(b),[3] which provides as follows:

"Notwithstanding the provisions of paragraph (a) of this section, a charge is deemed filed when the Commission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. *A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date.* However, an amendment alleging additional acts

ment." Pettway v. American Cast Iron Pipe Co., 5 Cir. 1969, 411 F.2d 998, 1005. The Commission has no power to issue cease-and-desist orders, nor is it even empowered to bring suit in the courts. On the contrary, when conciliation has failed, the aggrieved party himself must bring suit against the alleged discriminator. See Pettway v. American Cast Iron Pipe Co., *supra*, 411 F.2d at 1005; Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, 32–33. As the Seventh Circuit has said, "The statute gives the Commission no enforcement powers through the adjudicatory process. It allows the Commission only to investigate charges and attempt to gain compliance

by informal methods of conference, conciliation, and persuasion. Enforcement of the rights of aggrieved parties resides exclusively in the federal courts." Choate v. Caterpillar Tractor Co., 7 Cir. 1968, 402 F.2d 357, 359. Thus it is obvious that the private litigant's right of access to the courts must be vigilantly protected, for if the courthouse door closes in his face, enforcement of the Act ceases to exist.

2. This contention is explained in greater detail in Part IV of this opinion.

3. Section 1601.11(a) is set out in the text of this opinion at p. 4 *supra*.

constituting unlawful employment practices not directly related to or growing out of the subject matter of the original charge will be permitted only where at the date of the amendment the allegation could have been timely filed as a separate charge." (Emphasis added.)

The validity of this regulation has been upheld by this court on two previous occasions. Weeks v. Southern Bell Telephone & Telegraph Co., *supra*, 408 F.2d at 230–31; Georgia Power Co. v. EEOC, *supra*, 412 F.2d at 466. Even Standard Brands impliedly concedes that this regulation is reasonable and valid, but Standard Brands argues, in effect, that plaintiff's amended charge of discrimination fell within the ambit of the *third* sentence of the regulation. We cannot agree. For the reasons hereinafter given we conclude that the amended charge came within the perimeter of the *second* sentence of the regulation and thus related back to the date of the filing of the original charge.

### III.

We turn first to Standard Brands' contention that Celia Sanchez is irrevocably bound by the fact that she checked only the box labeled "sex" when she executed her original charge of discrimination. We reject this contention because we conclude that her failure to check the box labeled "national origin" was a mere "technical defect or omission" within the meaning of the second sentence of the Commission's regulation.

In analyzing this contention, we begin with the obvious proposition that the crucial element of a charge of discrimination is the *factual* statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations. The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged. In the context of a statute like Title VII it is inconceivable that a charging party's rights

should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations. Surely the only procedural requirement which should confront a Title VII complainant is the requirement that he state, within the ninety-day period, *facts* sufficient to trigger a Commission investigation.

Standard Brands, of course, disagrees. Its argument is, in effect, that it is quite reasonable to require a charging party to state during the ninety-day period both (1) his factual allegations and (2) the correct label to designate which type of discrimination is exhibited by the facts alleged. The following passage from Standard Brands' brief is illustrative of this argument:

"Certainly it is not unreasonable to require a charging party promptly to articulate the reason why he thinks he is being treated unfairly by an employer. No special skill or education is needed to check one or more of the boxes on the Commission's charge form marked: 'Race or color'; 'Religious Creed'; 'National Origin'; or 'Sex.' Obviously, an employee cannot know or believe he is discriminated against unless he knows from what class of person he is treated differently. If he knows the preferred class of persons, he knows the motivation of his employer."

We cannot accept Standard Brands' argument that a dual requirement is reasonable. On the contrary, we think such a stringent rule would be unduly harsh. In this regard we can conceive of at least three reasons why a charging party might fail to check the correct box on the EEOC charge form, and none of them should cut off the charging party's rights. First, the charging party may have precise knowledge of the facts concerning the "unfair thing" done to him, yet not be fully aware of the employer's *motivation* for perpetrating the "unfair thing." Secondly, the charging party may be so unlettered and inarticulate that he does not fully comprehend the distinction between an act motivated by

"sex discrimination" and an identical act motivated by "national origin discrimination."[4] Finally, the charging party may simply be unschooled and unsophisticated in the use of forms. Should a charging party forfeit his cause of action for reasons such as these? We think not.

We must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated. It cannot be doubted that "a large number of the charges filed with [the] EEOC are filed by ordinary people unschooled in the technicalities of the law." King v. Georgia Power Co., N.D. Ga. 1968, 295 F.Supp. 943, 947. This fact can only point us in the direction of liberal procedural rules. As Judge MacBride of the Eastern District of California wrote in a Title VII case:

"We are not dealing with businessmen-plaintiffs or plaintiffs accustomed to consulting lawyers about their rights. This law is a remedial one, and the Congressional purpose would not be furthered by making plaintiffs of the kind with which we are concerned, members of the working class who are generally without substantial higher education, dot every 'i' and cross every 't' on their way to the courthouse." Antonopulos v. Aerojet-General Corp., E.D. Cal. 1968, 295 F.Supp. 1390, 1395.

It goes without saying, of course, that it is irrelevant whether Celia Sanchez is educated or uneducated. The point is that *some* charging parties are uneducated and inarticulate, and the procedur-

al rules we develop in this case and in others must be sufficiently liberal to protect their rights. Consequently, we decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out.

We note with approval that a district court in this circuit recently held, in effect, that the only absolutely essential element of a timely charge of discrimination is the allegation of fact contained therein. In denying a motion to dismiss in Wilson v. Monsanto Co., E.D. La., Jan. 5, 1970, 315 F.Supp. 977[5] Judge Comiskey wrote:

"Under § 706(d) of Title VII [42 U. S.C.A. § 2000e–5(d)] a charge of discrimination must be filed within 90 days of the alleged discriminatory act. In the instant case, plaintiff was denied employment on February 1, 1967. In a letter dated February 10, 1969, he wrote 'To whom it may concern' explaining that he had applied for a job with defendant, had passed all tests given to him, but had not been hired. He did not state that he was Negro or that he had been denied employment because of his race. His letter was received by the EEOC and date-stamped on February 24, 1967. Thereafter, on June 30, 1967, pursuant to [29 C.F.R.] § 1601.11(b) plaintiff transferred his allegations to an official EEOC charge form. At that time he cured the technical defects of his original charge by verifying the charge and by formally stating that he believed that the denial of employment was due to his race.

"Defendant's contention that plaintiff's charge is untimely because the

---

4. While the distinction between the two types of discrimination will undoubtedly be crystal clear to a lawyer delving into the law books to research a legal question, it may not be so apparent to an uneducated layman who is required to put pen to paper and, by filling out a form, to articulate his grievance "as best he can without expert legal advice." Pettway v.

American Cast Iron Pipe Co., 5 Cir. 1969, 411 F.2d 998, 1005.

5. Judge Comiskey's unpublished memorandum order was brought to our attention after oral argument by counsel for the EEOC. Copies of the order were also made available to counsel for Standard Brands and counsel for Celia Sanchez.

only sworn charge of racial discrimination was filed more than 90 days after the alleged act of discrimination must fail. It is now well established in this Circuit and elsewhere that *once a timely complaint is filed with the EEOC it may later be amended to cure technical defects such as lack of verification or failure to attach a legal conclusion (racial discrimination) to the factual occurrences complained of.* Georgia Power Co. v. Equal Employment Opporuntiy Comm., 412 F.2d 462 (C.A. 5, 1969); Weeks v. Southern Bell Tel. & Tel., 408 F.2d 228 (C.A. 5, 1969). Therefore, plaintiff's timely letter, amended and perfected in accordance with the EEOC Regulations, was a valid charge." (Emphasis added, footnote omitted.)[6]

■■■ Finding ourselves in agreement with the thrust of Judge Comiskey's analysis, we hold that a charging party's failure to attach the correct legal conclusion to the factual allegations contained in a charge of discrimination is a mere technical defect which may be amended after the expiration of the ninety-day period. Thus, in the present case, plaintiff's failure to check the box labeled "national origin" when she executed her original charge of discrimination was an amendable defect. In ac-

cordance with the provisions of 29 C.F.R. § 1601.11(b), her act of checking the "national origin" box on March 18, 1967, related back to the filing of her original charge on January 3, 1967. It follows, therefore, that she is not barred from including in her judicial complaint allegations concerning national origin discrimination.

IV.

Having determined that plaintiff's judicial complaint is not restricted by her initial choice of boxes on the EEOC charge form, we must next consider Standard Brands' alternative argument concerning the words which plaintiff wrote when she executed the original and amended charges. Standard Brands seeks to convince us that plaintiff's charging words and her pleading words are not sufficiently harmonized and synchronized. To be more specific, Standard Brands presses a two-fold argument. First, it is Standard Brands' position that *the amended charge of discrimination contains factual allegations which are new and distinct* from any factual allegations in the original charge, and therefore that the amendment was improper insofar as those allegations are concerned. Secondly, even if the amendment was proper, Standard contends that the complaint filed in the court be-

---

6. Standard Brands attempts to draw a distinction between a case like *Wilson* (a situation in which *no* box has been checked) and the present case (a situation in which *one* box has been checked). Included in Standard Brands' brief is the following passage:

"Where an employee has written to the EEOC, stating a set of facts in a letter without attributing any motivation to the employer's behavior, it well may be that an inference of some proscribed motivation is raised by the employee's contacting the EEOC. Identifying the motivation then becomes only a matter of obtaining clarifying details in the formal charge. However, this is not the case where, as here, an employee fills out a formal charge form, checks the appropriate boxes to identify the proscribed motivation, declines to check the remaining boxes, then, at a later time fills out a new charge form

and adds a new and different motivational element. In the latter case, no inference is warranted that a motivational issue other than the previously stated one will be raised."

We find this argument unpersuasive for two reasons. First, in view of the fact that many of the charge forms filed with the EEOC are filed by persons who are relatively unlettered and inarticulate, we do not share Standard Brands' dogmatic assumption that every charging party who checks one box has made a conscious, fully considered, deliberate decision to reject the remaining boxes. Secondly, and more fundamentally, as we have clearly indicated in the text of this opinion, we think the crucial element in a charge of discrimination is the set of *facts* alleged therein, not the charging party's conclusion concerning the employer's *motivation*.

low contains new and distinct allegations which are not found in either charge filed with the EEOC and therefore are not properly the subject to Title VII action. We are compelled to reject these contentions. In the context of Title VII we find sufficient continuity running through the original charge and the amended charge to the judicial pleadings which followed.

■ Our consideration of this issue must begin with a reiteration of our conviction that procedural technicalities are not to stand in the way of Title VII complainants. Nothing in the Act commands or even condones the application of archaic pleading concepts. On the contrary, the Act was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship. It would falsify the Act's hopes and ambitions to require verbal precision and finesse from those to be protected, for we know that these endowments are often not theirs to employ.

In the courts we have largely liberated ourselves from the tentacles of ancient pleading rules, see, e.g., Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L. Ed.2d 80, and there are few if any vestiges remaining in administrative agency proceedings, see, e.g., Akers Motor Lines, Inc. v. United States, W.D.N.C. 1968, 286 F.Supp. 213. It is more important that pleading rules be relaxed in the decidedly informal atmosphere of Title VII. Since the Act involves "a lay-initiated proceeding," Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, 30 n. 3, "it would be out of keeping with the Act to import common-law pleading niceties to [the charge of discrimination] or in turn to hog-tie the subsequent lawsuit to any such concepts." *Id.* This Act was designed to protect a worker from becoming an industrial pariah, and his lack of literary acumen should not stymie his quest for equal employment opportunity.

■ In light of these guiding principles, we cannot accept Standard Brands' criticisms of the amended charge and of the judicial complaint. With regard to the amended charge, we think the allegations included therein constituted mere clarification and amplification of the original charge within the meaning of 29 C.F.R. § 1601.11(b). In her original charge Celia Sanchez stated facts suggesting that she had been the victim of abuse, harassment, and unfair treatment. Her amended charge simply spelled out in greater detail facts tending to demonstrate such treatment. Even if, as we suspect, the Commission assisted her in framing her allegations in the amended charge, the allegations thus framed "reflect the essence of the earlier [charge] and merely represent an exercise of the Commission's authority to reframe charges and to use available materials and information to articulate lay complainants' charges." Blue Bell Boots, Inc. v. EEOC, *supra*, 418 F. 2d at 357. In short, we find no fatal variance between the original charge and the amended charge. Therefore, since the allegations in the latter constituted a valid amendment of a timely charge they cannot be attacked as untimely.

■ Standard Brands, however, insists that plaintiff's judicial complaint contains allegations which are beyond the scope of *either* charge of discrimination. This argument appears to be premised on the assumption that every particular fact alleged in the judicial complaint must have a direct counterpart in the charge of discrimination. For the reasons hereinafter given, we decline to exact such specific articulation and miniscule particularity in the context of Title VII. We conclude that the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow.

■ As a general proposition, it is well established that "the scope of an EEOC complaint should not be strictly interpreted." Baxter v. Savannah Sugar Refining Corp., S.D. Ga. 1968, 46 F.R.D. 56, 59. Such a generalization, however, does not answer the more precise ques-

tion of what *standard* is to be utilized in measuring the proper scope of a complaint. This circuit has never before considered this precise question.[7] At least one district court in this circuit has addressed itself to the question, however, and in our judgment it responded to the question by giving the correct answer. In King v. Georgia Power Co., N.D. Ga. 1968, 295 F.Supp. 943, Judge Smith held that the allegations in a judicial complaint filed pursuant to Title VII "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." 295 F.Supp. at 947. In other words, the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

 The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

A more exacting rule would be destructive of the logic of the statutory scheme, for it would impede the ability of the Commission to effect voluntary compliance. If an alleged discriminator knew that a particular issue which was the subject of EEOC conciliation efforts could never be the subject of a civil action, his incentive toward voluntary compliance would be lessened. In its amicus brief in the present case, the EEOC embraces this fundamental policy consideration in these words:

"Section 706 [42 U.S.C.A. § 2000e—5] contemplates the filing of charges by persons untutored in the technicalities of the law and who may not, at that time, be able to fully articulate their grievances or be aware of the full panoply of discriminatory practices against them or others similarly situated. * * * As in the present case, where a writing comports with the Commission's Regulations (29 C.F.R. 1601.11) it constitutes a charge of discrimination and triggers the Commission's Investigation, decision-making and conciliation functions. In processing a charge, the Commission deems a charge, as noted by this court, to be of "extreme importance with heavy overtones of public interest." [Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, 33] * * * Accordingly, the Commission will seek relief from those unlawful employment practices which are like or related to

7. Standard Brands argues that this court *did* consider this question in Oatis v. Crown Zellerbach Corp., 5 Cir. 1968, 398 F.2d 496, but we do not agree with this reading of *Oatis*. In *Oatis* we were concerned with an entirely different question —whether a class action can be maintained under Title VII when only one member of the class has filed a charge of discrimination with the EEOC. That question was answered in the affirmative. At one point in the *Oatis* opinion we stated that the issues which could be considered in the class action were limited to those which had been "properly asserted" in the one charge which had been filed with the EEOC. 398 F.2d at 499. We did not, however, consider the question of the proper *standard* for deciding whether an allegation in a Title VII complaint has been "properly asserted" in a charge of discrimination. Thus, in considering that question in the present case, we write on a clean slate.

the charge filed with the Commission and which grow out of proceedings before the Commission. * * *

"The Commission which must operate on the basis of the administrative charge, rarely drawn by an attorney, must therefore view the charge in its broadest reasonable sense in order to effectively attempt to eliminate, by the administrative process, the discriminatory practices and policies which it finds. * * * Lacking enforcement powers, the Commission's disputes resolution machinery could not succeed if the federal courts were not in a position to view the complaint filed in a § 706 proceeding as broadly as the Commission views the charge." (Citations and footnotes omitted.)

A *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance. As Judge Smith wrote in *King:*

"This rule, broadly speaking, in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between [the] EEOC and the employer. If the civil action were not so limited, then the primary emphasis of [Title VII] would be circumvented, i.e., an emphasis upon voluntary settlement of all issues without an action in the District Court." 295 F.Supp. at 947.

Thus we agree with Judge Smith that our holding with respect to the permissible scope of a Title VII judicial complaint "is based on the inherent logic of the stated rule within the statutory scheme." *Id.*

Viewed in the light of the rule we have adopted, nothing in the judicial complaint filed by Celia Sanchez is beyond the scope of her charges filed with the EEOC. Thus she is entitled to maintain her civil action on the basis of that complaint.

V.

We consider it important to note expressly that in deciding this case we do not reach in any manner the *merits* of the controversy between Celia Sanchez and Standard Brands. We simply hold that Celia Sanchez is entitled to get into the courthouse in the first place, and thus we remove the technical barricades barring her entry.

In his typically colorful manner, Chief Judge Brown of this circuit has characterized the encounter between a Title VII complainant and "a huge industrial employer" as a "modern day David and Goliath confrontation." Pettway v. American Cast Iron Pipe Co., *supra,* 411 F.2d at 1005; see Jenkins v. United Gas Corp., *supra,* 400 F.2d at 33. In such a confrontation, surely Goliath should not be allowed to fell David with the help of a club fashioned from forms and legal technicalities. The most elementary principles of justice require us to remove this club and compel a battle on the *merits* of the controversy.

The judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

GODBOLD, Circuit Judge, dissents.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

GODBOLD, Circuit Judge:

I dissent from the denial of petition for rehearing.