Henry **HOSTON**, Jr., Individually and on behalf of all others similarly situated, Plaintiff,

v.

**UNITED STATES GYPSUM CO.,** Defendant.

Civ. A. No. 74–1690.

United States District Court, E. D. Louisiana.

Jan. 2, 1975.

Supplemental Opinion March 17, 1975.

Okla Jones, II, Ronald P. Nabonne, New Orleans, La., for plaintiffs.

Harry S. Redmon, Jr., Rutledge C. Clement, Jr., New Orleans, La., John A. McDonald, Steven H. Adelman, Chicago, Ill., for defendant.

## OPINION ON MOTION TO MAINTAIN CLASS ACTION

ALVIN B. RUBIN, District Judge:

Henry Hoston, Jr., was employed by U. S. Gypsum in 1963. He worked for that company until 1973, when he was discharged, allegedly for poor work practices and insubordination. On May 5, 1973, he filed a charge with the EEOC contending he had been a victim of racial discrimination. After waiting almost a year for action, Hoston requested his notice of a right to sue under Title VII of the Civil Rights Act; it was issued on April 5, 1974. Subsequently Hoston filed this complaint, as a class action.

Plaintiff seeks to represent himself individually, and a class of "blacks who have been, are and will be adversely affected by the discriminatory practices described in his complaint." He contends that the class should be composed of all blacks who (1) are presently employed by defendant; (2) were employed by defendant in the past but who are no longer so employed; and (3) applied for jobs but were rejected.

The defendant urges that it has dealt with Hoston solely on the basis of his

personal situation, and has not acted or failed to act on grounds generally applicable to other blacks, so that his class action claims do not meet the specific requirement of Rule 23(b)(2). It also argues that Hoston's claims do not satisfy the tests of Rule 23(a): his claims are not typical of the claims of other black employees, and the alleged class is not so numerous that joinder of all members is impracticable.

■ The mere fact that a plaintiff alleges a violation of Title VII does not make his suit ipso facto a proper class action. Mason v. Calgon Corp., W.D. Pa.1974, 63 F.R.D. 98. Where employment discrimination is urged on the basis of specific circumstances relating only to particular individuals, a class action may be inappropriate. Bradford v. Peoples Natural Gas Co., W.D.Pa. 1973, 60 F.R.D. 432. And it may well be that, where the complaint merely sets forth conclusory assertions of unlawful discrimination and the plaintiff can muster no facts that would even tend to show racial discrimination, a motion to maintain a class action should be denied. O'Connell v. Teachers College, S.D.N.Y. 1974, 63 F.R.D. 638; Calhoun v. Riverside Research Institute, S.D.N.Y.1972, 4 FEP Cases 1006.

■ But that there are limits to this inquiry the law of the Fifth Circuit is clear: Rule 23 does not permit the court to consider the merits of a claim when passing on the propriety of a class action. "The determination whether there is a proper class does not depend on the existence of a cause of action." Miller v. Mackey International Inc., 5 Cir. 1971, 452 F.2d 424, 427. The court may not even consider the likelihood of success by the plaintiff or whether the case involves "serious" charges. Miller, supra, at 429, and cases cited in fnn. 4 and 5 at 427–429.

Miller dealt, however, only with Rule 23 generally. The decision the panel reversed, and several of the cases it cited, looked to the merits in order to determine the class on the theory that the defendant should not be put to the burden and expense of a class action if it were clear at the outset that the class would not prevail. See, e. g., Dolgow v. Anderson, E.D.N.Y.1968, 43 F.R.D. 472.

Under Rule 23(b)(2), the question as to the "merit" of the claim arises in a different context. This subsection of the rule permits a class action when the defendant "has acted or refused to act on grounds generally applicable to the class . . . ." In cases where racial discrimination is at issue, the rule's language appears to invite the court to determine whether the defendant has in fact acted on racial grounds, a factor generally applicable to the class, or whether its actions with respect to the named plaintiff have been the result of the plaintiff's personal temperament or job performance, matters individual to the plaintiff. Since a defendant who did discriminate on the basis of race would hardly do so overtly, the court's inquiry would test the reality of the defendant's ostensible reasons.

The authors of Rule 23(b)(2) thought this subsection particularly appropriate in cases of alleged racial discrimination. See Notes of the Advisory Committee, 39 F.R.D. 98, 102. The Committee's comments did not go to the kind of evidentiary showing, if any, needed at the outset of the suit, but they demonstrate that the Advisory Committee did not overlook the difficult problem of a (b)(2) class action alleging race discrimination. While the answer to the question is not pellucid, it appears on balance that the court should not weigh, on a motion to maintain the class, the very evidence that will determine the plaintiff's claim on the merits. Rule 23(c)(1) requires the court to determine whether a suit is to be maintained as a class action "[a]s soon as practicable after [its] commencement." The determination must necessarily be made before the case is ready for trial on its merits. The outset of a suit is not the

appropriate point at which to assay the value of the complaint.

■ This does not mean that the decision whether or not the case is to proceed as a class action must be reached on the naked pleadings. Discovery was allowed in this case, as it has been allowed by other courts, to determine whether the requirements of Rule 23 have been met. Yaffe v. Powers, 1 Cir. 1972, 454 F.2d 1362; McAdory v. Scientific Research Instruments, Inc., D. Md.1973, 355 F.Supp. 468; Note, Requests for Information in Class Actions, 83 Yale L.J. 602 (1974); see also 7A Wright & Miller, Federal Practice and Procedure § 1785, note 57, and cases cited therein. After time to develop the "class action facts," the plaintiff should be required to present evidence tending to show that the requirements of Rule 23(a) and one of Rule 23(b)'s subsections have been met. In the exercise of sound judicial discretion the court can then determine whether the class action order should be issued, taking into account always that the order may be conditional, and that it may be later altered or amended pursuant to Rule 23(c)(1). But determination of the ultimate fact at issue by weighing both parties' evidence would require the court to hold, and the parties to prepare for, two hearings on the same issue and would be at best wasteful. The "class action" issue the defendant asks the court now to try —whether the plaintiff was in fact discharged because he was an unsatisfactory employee or whether this was a pretext and his race was the true, and pervasive, reason—is not the kind of issue that can economically be tried apart from the merits. Hence it is not appropriate now to go into a mini-trial of that question.

Rule 23(c)(4) authorizes the court to divide the class into subclasses and treat each subclass separately. Plaintiff has defined his class in terms of several categories; these categories are properly subclasses, and his suit may be an ap-propriate class action with respect only to some of them. Let us therefore examine the pleadings and evidence with respect to each of the subclasses designated by the plaintiff, since each has somewhat different interests and characteristics.

## I. Present Employees and Employees Discharged in the Past 4 Years

■ The evidence demonstrates that the defendant, as of July 12, 1974, employed 23 nonsalaried blacks. 33 blacks have been employed in the past who are no longer employed. While these numbers are not legion, it is clear that the class is sufficiently large to make joinder of these individuals impracticable. Carpenter v. Davis, 5 Cir. 1970, 424 F. 2d 257; Cypress v. Newport News G & N Hosp. Assn., 4 Cir. 1967, 375 F.2d 648.

■ Nor must the court weigh the evidence to determine whether or not the defendant has in fact acted on grounds generally applicable to this class, though the court does not mean by this disposition to denigrate counsel's hard work and able memoranda. Here the plaintiff has introduced some evidence tending to show a factual basis for his claim of discrimination, and at this stage of the case that is all he must do.

## II. Black Applicants Not Hired

If there was indeed discrimination in hiring, the number of persons not hired is likewise numerous. There are questions of law and fact common to this group of persons, and there is no challenge to the representative quality of the plaintiff. Such a challenge would be hard to make, at least in this Circuit, where "the requirements of Rule 23(a) must be read liberally in the context of suits brought under Title VII and Section 1981. . . . Suits brought under these provisions are inherently class suits. By definition, discrimination on the basis of race or national origin is a class wrong. Oatis v. Crown Zellerbach

Corp., 5 Cir. 1968, 398 F.2d 496, 499." Rodriguez v. East Texas Motor Freight, 5 Cir. 1974, 505 F.2d 40. The defendant does argue that the plaintiff has no standing to raise the issue of discriminatory hiring practices, however, because he failed to include this issue in his EEOC complaint.

■ A complaint in an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., may include any issue that could reasonably be expected to be within the scope of the EEOC investigation. Sanchez v. Standard Brands, 5 Cir. 1970, 431 F.2d 455. The breadth of the EEOC complaint is determined primarily by its factual allegations, not by the complainant's legal conclusions.

> Our consideration of this issue must begin with a reiteration of our conviction that procedural technicalities are not to stand in the way of Title VII complainants. Nothing in the Act commands or even condones the application of archaic pleading concepts. On the contrary, the Act was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship. It would falsify the Act's hopes and ambitions to require verbal precision and finesse from those to be protected, for we know that these endowments are often not theirs to employ. *Id.* at 465.

Consequently, the scope of the complaint "should not be strictly interpreted." "[P]rocedural technicalities are not to stand in the way of Title VII complainants." *Id.*

The EEOC complaint filed by Mr. Hoston said nothing about discriminatory hiring practices. It recited:

> Respondent maintains disparate terms and conditions of employment.
>
> Respondent pays its Negro employees less wages than Caucasians.
>
> Failing to pay me by (sic) just weekly wages.

> By refusing to allow me to load and unload my truck properly.
>
> By harassing and intimidating me.
>
> Respondent has denied me a salary increase, whereas Whites hired after me are earning more.

The scope of the investigation that could "reasonably be expected to grow out of this charge" might depend in part on considerations peculiar to the actual investigating agency—the funds and staff available to it, the skill or lack of skill of its personnel, and the like. The court's determination should not be based on such circumstantial factors but on the nature of the investigation that would reasonably be expected from an agency staffed to do the job. The judicial attitudes that affect the application of this standard and the difficulties in applying it are set forth in the discussion in Arey v. Providence Hospital, D. D.C.1972, 55 F.R.D. 62, 66:

> [M]any courts have viewed the factual allegations in EEOC complaints in broad terms in order to effectuate, the purposes of the Act. *See, e. g., Tedford* [Tedford v. Airco Reduction, Inc., 4 E.P.D. ¶ 7654, 5th Cir. 1972]; Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970); Parliament House Motor Hotel v. EEOC, 444 F.2d 1335 (5th Cir. 1971); Jenkins v. United Gas Co., 400 F.2d 28 (5th Cir. 1968). On the other hand, the policies favoring informal persuasion and voluntary compliance would be undermined if parties were given complete freedom to litigate allegations never brought before the EEOC for investigation and conciliation. *See, e. g., Tedford, supra;* Edwards v. North American Rockwell Corp., 291 F.Supp. 199 (C.D.Cal.1968).

That Court then observed:

> Applying the *Sanchez* rule to this case, the question is whether the scope of the EEOC investigation could reasonably be expected to include potential discriminatory hiring policies as

well as the discriminatory promotion and transfer policies alleged in the EEOC complaint. In a similar case, Tedford v. Airco Reduction, Inc., *supra,* the court found that the plaintiff could not allege discrimination in the seniority system when he had limited his EEOC complaint to allegations of discriminatory , hiring practices. However, this court finds *Tedford* distinguishable. At the time of the filing in *Tedford,* the plaintiff was not an employee of Airco and, therefore, it is reasonable to assume that the EEOC investigated hiring practices across the board but did not at that time look into the seniority system because the complainant had *never* been in a position to experience any discrimination in that sphere of employment. However, here the Plaintiff had been in a position of a job applicant, had been hired, and later found herself in a position as an applicant for promotion. In her present complaint, she alleges discrimination in both areas while in her EEOC complaint she included the area that, due to its immediacy, was the most vivid in her mind. It seems clear that once having received the complaint of discrimination against complainant the EEOC would as a reasonable matter, extend their investigations to all areas of employment in which the complainant at one time or another had been exposed, including, of course, the facts and circumstances surrounding the initiation of her employment. Accordingly, litigation of the validity of plaintiff's claim as they pertain to defendant's hiring practices is not premature. *Id.* at 67.

Here we have the same situation: the plaintiff's attention was focussed on another situation, but an investigation might well have extended further. In investigating another charge against U. S. Gypsum, YNO 9–465, the charging party's allegations were similar to Mr. Hoston's case, and the EEOC issued a decision that made no reference to hiring practices. But since the EEOC decision did not refer to hiring practices at all, it does not support any conclusion as to the scope of the investigation.

■ While the issue is, like most determinations of this kind, not free from doubt, I conclude that a reasonable investigation of this complaint would likely have extended to hiring practices. See also EEOC v. Hickey-Mitchell Co., E.D.Mo.1973, 372 F.Supp. 1117.

We need not evaluate the alleged evidence or lack of it to support the charges of discrimination in hiring. The plaintiff has introduced some evidence tending to support his claim, and the court need not at this stage weigh the contrary evidence.

Accordingly, the motion to maintain a class action is granted. The plaintiffs will represent three classes: persons who sought employment and were denied it because of alleged racial discrimination; persons who have been employed and subjected to on-the-job discrimination; and current black employees.

SUPPLEMENTAL OPINION

U. S. Gypsum has moved for an order that notice not be given to the class in this employment discrimination case and, in the alternative, for a determination that the class members are not entitled to opt out if notice is to be given. They argue that Rule 23(d)(2) does not require the court to give notice, and that Rule 23(b)(2), pursuant to which this class was certified, does not contemplate that class members will be entitled to opt out.

*Notice*

■ Rule 23(d)(2), on its face, only permits notice; it does not require the court to give it:

In the conduct of actions to which this rule applies, the court may make appropriate orders . . . requiring, for the protection of the members of the class or otherwise for the fair

conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action

.　.　. .

This section of Rule 23 reflects the judgment of its authors that notice need be given only in some actions brought under sections (b)(1) and (b)(2), although Rule 23(c)(2) requires notice in all actions brought under section (b)(3). See Advisory Committee Notes to 1966 Amendments, 39 F.R.D. 98, 106–107; 7A Wright & Miller, Federal Practice and Procedure, § 1793, 202–203. A number of courts have held, in accordance with the Committee Notes, that notice is not mandatory in actions brought under 23(b)(1) and (b)(2). See, e. g., Bing v. Roadway Express, Inc., 5 Cir. 1973, 485 F.2d 441; Mungin v. Florida East Coast Ry. Co., M.D.Fla.1970, 318 F.Supp. 720, aff'd, 5 Cir., 441 F.2d 728; Johnson v. City of Baton Rouge, E.D.La. 1970, 50 F.R.D. 295.

Although notice may be discretionary, Rule 23(d)(2) suggests a number of events that might trigger the court's exercise of its discretion: entry of an order going to the extent of the judgment; an order giving members a chance to intervene, or to respond to the adequacy of the class representation; and "any step in the action." The whole notice issue arises in this case because the court has just certified a class; certainly this is an order going to the extent of the judgment that will substantially affect the rights of class members. If any member of the class is to object to the adequacy of class representation, or to intervene as an individual, he would best do so now rather than in the midst of a hearing on the merits or after judgment. In short, the certification of a class un-

der Rule 23(b)(2) is an event that properly invokes the court's discretion under (d)(2), and the practical consequences of certification suggest that notice ought, as a matter of good management, be given soon after it is made.

Other considerations, of perhaps less significance in the eyes of the law but of pragmatic importance to the parties, suggest that notice should, as a matter of discretion, be given in this case. The pendency of this case may well have practical effects on the relations between the defendant and its employees—on the conduct of collective bargaining, on the manner in which employees are laid off should that become necessary, and on the working atmosphere in the plant. In addition, the plaintiffs have asserted a claim for back wages for some members of the class other than the named plaintiff. These practical effects, and the money stake that some class members may have in the litigation, militate in favor of giving notice, and doing so at this stage of the case.

Finally, the case law suggests that 23(d)(2) is, to the extent it leaves notice to the discretion of the court, deceptive; notice may be required as a matter of due process of law, no matter what Rule 23 seems to countenance. This was the Second Circuit's conclusion in Eisen v. Carlisle & Jacquelin, 2 Cir. 1968, 391 F.2d 555, a conclusion not undercut by the Supreme Court's subsequent decision in the same case. See Eisen v. Carlisle & Jacquelin, 1974, 417 U.S. 156, 94 S.Ct. 2140, n. 14 at 2152, 40 L.Ed.2d 732. The Seventh Circuit has reached the same result. Schrader v. Selective Service Sys. Loc. Bd. No. 76, 1972, 470 F.2d 73.

The treatment later courts have given the district court's decision in Gregory v. Hershey, D.Mich.1969, 311 F. Supp. 1, demonstrates the res judicata consequences of failing to give notice to a (b)(2) class, which turn on the due process issue. The plaintiff there obtained a declaratory judgment entitling

him and the class he represented to selective service reclassification; although the case was later reversed on appeal, Gregory v. Tarr, 6 Cir. 1971, 436 F.2d 513, cert. denied 401 U.S. 990, 91 S.Ct. 1217, 28 L.Ed.2d 528, several courts had occasion to pass on the res judicata effect of the judgment on class members. In each case, the *Gregory* decision ultimately was denied res judicata effect because of the failure to give notice under Rule 23(d)(2). McCarthy v. Director of Selective Service, D.C. Wis.1970, 322 F.Supp. 1032, aff'd on other ground, 7 Cir., 460 F.2d 1089; Pasquier v. Tarr, E.D.La.1970, 318 F.Supp. 1350; Schrader v. Selective Service Sys. Loc. Bd. No. 76, D.C.Wis.1971, 329 F. Supp. 966, rev'd, 7 Cir., 470 F.2d 73, cert. denied, 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672.

Both Professor Moore and Wright & Miller dissent from the conclusion of the Second and Seventh Circuits that notice is a requirement of due process in (b)(1) and (b)(2) class actions. They believe instead that adequacy of representation is the crucial issue, and that plaintiffs adequately represented should be bound by the judgment. 3B Moore's Federal Practice ¶ 23.72; 7A Wright & Miller, Federal Practice & Procedure § 1793. Wright & Miller qualify their judgment by suggesting that "giving some type of notice in actions under Rules 23(b)(1) or 23(b)(2) probably is the best practice in most cases." 7A Wright & Miller, supra, at 205.

If notice is a matter of right, then it should be given in this case in order that the class action device may serve its purpose: a final adjudication of the issue of race discrimination. If notice is viewed instead as a matter of discretion, I conclude for the reasons noted above that notice should be given in this matter, and given at this point in the litigation. Both as a matter of prudence and in the exercise of sound discretion, the defendant's motion for an order pre-

venting the notice from being sent is denied.

*Class Member Options*

The defendant has also asked that, if notices are to be sent, class members not be permitted to exclude themselves from the class. Rule 23 does not appear to permit "opting out" in class actions certified under Rule 23(b)(2), as this action was. See Rule 23(c)(3), F.R.C.P.; 3B Moore's Federal Practice ¶ 23.60, at 23–1202; 7A Wright & Miller, Federal Practice & Procedure § 1793, 203–204; Mungin v. Florida East Coast Ry. Co., M.D.Fla.1970, 318 F.Supp. 720, aff'd 5 Cir., 441 F.2d 728. There is some authority for permitting class members to opt out if the action would be proper under either 23(b)(2) or (b)(3), but this class has been certified only under the former. See Ostapowicz v. Johnson Bronze Co., W.D.Pa.1972, 54 F.R.D. 465.

A (b)(2) class member who does not wish to be represented by the plaintiff's counsel, either because he is dissatisfied with their representation or because he does not wish to press his claim, may intervene and make his position clear, appearing either by counsel or in proper person. See Rules 23(d)(2), 24 F.R.C.P. In addition, if this action reaches a stage where money damages are found to be due, class members may be required to file claims for damage; those who fail to do so would not receive damages, though they would benefit from any equitable relief entered. See Harris v. Jones, D.Utah 1966, 41 F.R.D. 70; Philadelphia Electric Co. v. Anaconda Am. Brass Co., E.D. Pa.1968, 43 F.R.D. 452. For these reasons, the defendant's motion to reform the class notice is granted. The notice shall not give class members an opportunity to opt out; it shall, however, explain to them their right to intervene in the action if they choose to do so.

Because it appears that all members of the class can be identified by reasonable

effort, there is no need to publish this notice in newspapers. Should it appear at any point in the litigation that some class members may exist who have not been identified, or with whom communication by mail cannot be accomplished, the court may on proper motion order that notice be published.

The defendant suggested on oral argument of this motion that the parties are negotiating toward settlement of this action. If settlement is in fact reached, the members of the class must still be notified, but the content of the notice will be different. See Rule 23(e), F.R. C.P. Therefore, the parties have until March 24, 1975, in which to move for a modification of the class action notice; if no party has so moved, the notice shall be mailed to class members with only the modifications required by this opinion.