**H. KESSLER & COMPANY, a Partnership, Plaintiff,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al., Defendants.**

**Civ. A. No. 14770.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 24, 1971.

Arnall, Golden & Gregory, Atlanta, Ga., for plaintiff.

Joseph Ray Terry, Jr., Field Atty. Atlanta District Office, Atlanta, Ga., Equal Employment Opportunity Commission, Washington, D. C., for defendants.

MOYE, District Judge.

## ORDER

On February 3, 1971, the Equal Employment Opportunity Commission [EEOC] served upon H. Kessler & Company [Kessler] a Demand for Access to Evidence pursuant to 42 U.S.C. § 2000e–9. Kessler then filed a petition in this Court, *inter alia*, to set aside the Demand pursuant to 42 U.S.C. § 2000e–9 (c). The EEOC has filed a cross-petition seeking enforcement of the Demand. The controversy herein began on June 10, 1970, with the filing of a complaint with the EEOC by Louise Watley in which Mrs. Watley charged Kessler with discrimination against her on the basis of her race and sex. The June 10 charge read: "I work [sic] as manager of the record department and buyer for five and one half year [sic] but I never received the salary of a buyer. White male buyer [sic] received more pay and benefits, the only reason given that he was a male. The other reason given was that if they gave me a raise that I would make more than a white women [sic] who has been employed for a number of years; and therefore they couldn't pay me the same salary." On the EEOC complaint form, Mrs. Watley indicated that the most recent date the discrim-

ination took place was May 7, 1970. On October 20, 1970, Mrs. Watley submitted a second form to the EEOC which read: "I allege discrimination against Kessler's in that a white male performing the same duty as myself, buyer and manager, received more pay and employee benefits. I complained about this and stated that I was going to file a class action charge with EEOC and subsequently I was discharged because of my sex and race (Black), and because I said that I would file a charge with EEOC. Kessler discriminates against all female employees on the basis of their race and all Blacks are discriminated against on the basis of their [sic]. This is an amendment to the original charge filed on June 10, 1970." This charge also indicated that the most recent date the discrimination took place was May 7, 1970. The October 20 charge was further amended on October 26, 1970, by changing the third sentence to read: "Kessler discriminates against all female employees on the basis of their sex and all Blacks are discriminated against on the basis of their race (Black)." On October 22, 1970, Hubert L. Murray, an officer of the EEOC, interviewed several employees of Kessler and examined the Form EEO–1 required to be kept by the employer. Murray then requested information and records relative to the breakdown of current employees by race and sex and other information concerning the employees of Kessler. Kessler was cooperative in providing information relevant to the charge filed on June 10 but refused to supply records (other than Form EEO–1) or information not pertaining to the individual charge of discrimination filed by Mrs. Watley on June 10. The reasons for such refusal are stated by Kessler as follows:

(1) The other records requested are "not relevant to the original charge of discrimination filed by Louise Watley and the so-called amendment of October 20, 1970, was not timely with regard to changes in the substance of the original

charge but was only effective as to procedural defects such as the failure of Louise Watley to swear to the original charge;"

(2) "The information requested as to sex and race for the year 1969 was already contained in Form EEO–1 supplied to the defendant Murray, said information having been obtained by [Kessler] in accordance with § 1602.3 of the Regulations of the EEOC * * *"

(3) "The other information requested would be extremely difficult to obtain and onerous for [Kessler] to supply. For instance, as already stated, [Kessler], in compliance with the above-quoted regulation, does not keep records of its employees by race or sex. Nor does the company keep records of hirings, discharges, promotions or job classifications other than its payroll records. Thus to obtain such information would entail examining each payroll record for additions, deletions, or increases."

(4) "The information requested would be used by the complainant, Louise Watley, in furtherance of her union organizational activities and in furtherance of her vindictive harassment of [Kessler], the history of which was explained in detail to the defendant Murray."[1] After the EEOC request for information was refused, a Demand for Access to Evidence was served upon Kessler. The evidence and information demanded was as follows:

"1. A list of all employees from January 1, 1969 to the present reflecting the following for each:

 a. name

 b. race

 c. sex

 d. date hired

 e. job classification on date of hire

 f. promotions from one job classification to a higher job classification

 g. department to which initially hired and if any, to which subsequently transferred, reflecting the date of transfer

 h. salary at the date of hire and current salary

 i. current job classification and department to which assigned

"2. A copy of the current or most recent Standard Form EEO–1.

"3. All records, documents, correspondence, job descriptions and other papers which reflect descriptions of duties, responsibilities and privileges for each job classification or position.

"4. All records, documents, correspondence and other papers pertaining to discharges of employees (specifically including but not limited to documents such as discharge notices, which reflect the reasons for the discharges) from July 2, 1965 to the present reflecting the following information for each dischargee:

 a. race

 b. sex

 c. date of hire

 d. date of discharge

 e. job classification

 f. salary, and

 g. reason for discharge

"5. All records, documents, correspondence, brochures and papers which reflect company policies, pertaining to discharges of employees.

"6. Any and all like or related records, in addition to those heretofore enumerated, retained in a different form from the documents heretofore enumerated, but reflective of the substance of such documents."

1. The factual background for this charge is explained *infra*.

Kessler filed this petition within 20 days from the service of the Demand.

## AMENDMENT OF THE ORIGINAL CHARGE

■ One of the primary arguments of Kessler is that the EEOC is not entitled to investigate or obtain information pertaining to the amended charge since that charge was not filed within 90 days after the alleged act of discrimination.[2] Kessler contends that the facts alleged in the October 2 charge present additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the original charge and, therefore, that the October 20 charge is not a valid amendment within the meaning of EEOC Regulations. The pertinent Regulation provides:

"(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is deemed filed when the Commission receives from the person aggrieved a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date. However, an amendment alleging additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the original charge will be permitted only where at the date of the amendment the allegation could have been timely filed as a separate charge."

29 C.F.R. § 1601.11(b). Should the October 20 charge be deemed as a valid amendment under this Regulation, then,

under the preceding statutory provisions and regulations, the EEOC would be entitled to "discover" all evidence relevant or material to the original charge (June 10) *as amended* by the facts alleged on October 20.

Technical procedural arguments in Title VII cases have met with little success in this Circuit; and, in light of the remedial nature of the statute, the courts have consistently refused to allow procedural issues to be dispositive of the merits of the case. The procedural issue raised by Kessler in the instant case was disposed of in Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), and the Court deems that case controlling here. In *Sanchez*, the facts alleged by the plaintiff on the EEOC charge form were: "My complaint was that my boss lady hit me at my rear end and about a month before that I hurt my thumb and was out of work for seven days and the Company didn't pay me. I hurt my thumb at work." In the row of boxes on the form which represent the various categories of discrimination, she checked the box labeled "sex". This charge was filed within the 90-day requirement prescribed by 42 U.S.C. § 2000e–5(d). After the expiration of the 90-day period, the plaintiff executed an amended charge on the EEOC form which stated the following facts:

" 'AMENDED

" 'I was discriminated against by Standard Brands, Inc. because of my national origin and sex. My supervisor became very abusive toward me and constantly harrassed [sic] me on my job. She would rush me and one day she caused me to hurt my thumb. I lost 7 days of work and the company would not pay me for my lost time.

---

2. Under 42 U.S.C. § 2000e–9(a) the EEOC has authority to "examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation." With

regard to the "charges under investigation", such charges must be filed "within ninety days after the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(d).

On another occasion my supervisor struck me on my buttocks with her hand and accused me of doing my work wrong, rather than argue with her I told her husband [the plant manager] I was going home. When I returned the next day my supervisor told me she did not need me any more and fired me. My supervisor seemed most [sic] abrupt and vengeful against Negro and Mexican American women than with Anglo women.' "

In the rows of boxes representing the different categories of discrimination, she checked the boxes labeled "sex" and "national origin."

The defendant in *Sanchez* argued that, for several reasons, the second charge was not a valid amendment to the original charge and that the amendment was not properly to be considered by the EEOC or the Court.[3] With regard to the amendment, the Court considered two issues which are relevant here: (1) whether failure of the plaintiff to check the "national origin" box on the original charge precluded consideration of that charge by the EEOC and the Court; (2) whether the factual allegations in the second charge were allegations of "additional acts [of] unlawful employment practices" (within the meaning of the third sentence of 29 C.F.R. § 1601.11(b), *supra*) which precluded their consideration by the EEOC and the Court. As to (1), the Court ruled that the failure of the plaintiff to check the "national origin" box in the original charge was a mere "technical defect or omission" which was validly amended by the second charge. As to the defendants' argument that the factual allegations in the second charge were allegations of "additional facts" (the same argument that Kessler makes here) the Court stated:

"With regard to the amended charge, we think the allegations included therein constituted mere clarification and amplification of the original charge within the meaning of 29 C.F.R. § 1601.11(b). In her original charge Celia Sanchez stated facts suggesting that she had been the victim of abuse, harassment, and unfair treatment. Her amended charge simply spelled out in greater detail facts tending to demonstrate such treatment. Even if, as we suspect, the Commission assisted her in framing her allegations in the amended charge, the allegations thus framed 'reflect the essence of the earlier [charge] and merely represent an exercise of the Commission's authority to reframe charges and to use available materials and information to articulate lay complainants' charges.' Blue Bell Boots, Inc. v. EEOC, *supra*, [6 Cir.,] 418 F.2d [355] at 357. In short, we find no fatal variance between the original charge and the amended charge. Therefore, since the allegations in the latter constituted a valid amendment of a timely charge they cannot be attacked as untimely."

431 F.2d at 465. This Court believes the decision in *Sanchez*, though perhaps *dicta*, is dispositive of the issue considered herein, and the Court holds that the factual allegations contained in the October 20 charge constituted a clarification and amplification of the original charge within the meaning of C.F.R. § 1601.11(b) and, accordingly, the October 20 charge was timely filed under 42 U.S.C. § 2000e–5(d).[4]

---

3. As Kessler points out, *Sanchez* did not involve a demand for evidence procedure as does the instant case. In *Sanchez*, the EEOC had completed its investigation and suit had been filed. The case was before the Court of Appeals following a dismissal of the complaint by the district court.

4. Kessler argues that *Sanchez* is factually distinguishable from the instant case in that, *inter alia*, *Sanchez* involved a civil suit, whereas, this case involves the enforcement of a demand for evidence. The Court does not deem that distinction, or others, as controlling. The Court in *Sanchez* clearly dealt with the question

## RELEVANCY

■ Kessler's argument that certain parts of the demand are irrelevant apparently is based upon the premise that the October 20 charge was not a valid amendment to the original charge. Statements and allegations throughout Kessler's complaint and brief urge that the information sought is not relevant to the charge of "individual discrimination" filed on June 10. As the Court has ruled that the October 20 charge is a valid amendment, the relevancy of the information sought must be measured in light of the original charge, *as amended.* The Court has no doubt that the information or records sought in Demands Nos. 1–5 are relevant to the charge as amended. Demand No. 6, the Court believes, is a "catch-all" demand which, in light of the "good faith" requirement relative to specific demands, is "contrary to existing federal discovery procedures." Georgia Power Co. v. EEOC, *supra* note 4. Demand No. 6 is too broad, and the Court will not require Kessler to comply with Demand No. 6.

## BURDENSOMENESS

■ Kessler also argues that producing or providing certain of the information requested would be burdensome, onerous and difficult to obtain. Before examining Kessler's specific objections in this regard, the Court notes that arguments concerning inconvenience and difficulty in producing information in Title VII cases have been made, and most often rejected, in this Circuit. *E. g.,* Cameron Iron Works, Inc. v. EEOC, 320 F.Supp. 1191 (S.D.Texas 1970); Scott v. Douglas & Lomason Co., 3 EPD ¶ 8006 (N.D.Miss.1970); King v.

Georgia Power Co., 50 F.R.D. 134 (N.D. Ga.1970). If the information or records sought is relevant or material to the charge under investigation and the EEOC proceeds as authorized by the statute, then any inconvenience or difficulty (which is actually inherent in *any* compulsory process proceeding) must be considered as a "part of the social burden of living under government." Bradley Lumber Co. of Arkansas v. NLRB, 84 F.2d 97, 100 (5th Cir. 1936). Kessler points out several factors in support of its "burdensome" argument. First, Kessler indicates that it does not maintain records of its employees by race and sex (other than the EEO–1 Form), and that there are no records of hirings, discharges, promotions or job classifications other than what might be gleaned from its payroll records. It is obvious, of course, that Kessler cannot provide what it does not have. At the same time, however, utmost good faith is required in all discovery procedures. Georgia Power Co. v. EEOC, *supra.* The Court has determined that the information sought (in Demands Nos. 1–5) is relevant to the charge, as amended, under investigation. Such information insofar as it exists, through payroll records or other records, is to be produced. The Court notes that compilation or preparation of research or summaries by an employer is not normally required under the traditional standards of discovery. Georgia Power Co. v. EEOC, *supra;* 42 U.S.C. § 2000e–8(a). The compilation of lists, prepared from existing records, however, has been required. *E. g.,* Sheet Metal Workers, Local 104 v. EEOC, 3 EPD ¶ 8134 (9th Cir. 1971). The only compilation, by the employer, sought in

---

before this Court. Kessler also points to other cases in which the scope of an EEOC demand was in question. Union Bank v. EEOC, 296 F.Supp. 313 (C.D. Cal.1967); Georgia Power Co. v. EEOC, 295 F.Supp. 950 (N.D.Ga.1968); aff'd, 412 F.2d 462 (5th Cir. 1969). While those cases may be relevant to the *scope*

of the demand, the Court does not consider those cases as controlling on the question of the amendment involved in this case. Other cases cited by Kessler deal with the question of class actions under Rule 23, Fed.R.Civ.P., and they are not controlling of the issues presented here.

this case is a list of employees from January 1, 1969, to the present reflecting certain information about each employee. (Demand No. 1) All other demands require only the availability of certain existing records or documents. In light of the relatively limited time period involved in Demand No. 1, the Court does not envision any extreme burden upon Kessler in the preparation of the list demanded. The Court deems it appropriate that Kessler be required to produce the list sought in Demand No. 1. Compliance with the other demands (Nos. 2–5) will be satisfied by making the relevant records available for inspection and/or copying.

■■ Kessler also objects to the production of records dating from July 2, 1965 (EEOC Demand No. 4) in that the EEOC Regulations require preservation of employment records (*e. g.* applications, hirings, discharges, etc.) for only six months. 29 C.F.R. § 1602.14. The Court agrees with the Commission that this Regulation is directed at preservation of the employer's existing records and does not govern the extent of the Commission's authority to inspect records that, in fact, exist. This approach is supported by Georgia Power Co. v. EEOC, *supra,* where the Commission's demand was limited to a five-year period prior to the alleged violation. Any time period limitation, of course, is inherently arbitrary. In this case, the Court deems July 2, 1965, a reasonable beginning point for the Commission's investigation.

■ Another objection is that the information sought in Demand No. 1 is already contained in the EEO–1 form which was supplied to the EEOC by Kessler. The EEO–1 form contains information concerning the general make-up of Kessler's employees by race, sex, and job category. The pertinent Demand seeks a list of employees, by name, since January 1, 1969 reflecting certain information (e. g., race, date hired, salary, etc.) with respect to each employee so named. While the general subject matter of the EEO–1 form and the pertinent demand may be similar, the Court deems the specific information requested in the Demand supplemental to that contained in the EEO–1 form. The information is relevant to the charge and must be produced.

## CONSPIRACY AND RELATED ISSUES

■ Kessler's final attempt to halt the investigatory processes of the EEOC consists of serious allegations of "conspiracy" on the part of EEOC officials. Those allegations relate principally to the activities of the charging party, Louise Watley. As a matter of background, therefore, an outline of those activities, as alleged by Kessler, is important here.

After Mrs. Watley's discharge from employment in May, 1970, a series of confrontations, consisting of picketing, demonstrations, distributing leaflets, between Mrs. Watley and Kessler erupted. The petition alleges that such activities were conducted, in part, on behalf of the Metropolitan Atlanta Summit Leadership Congress (MASLC) with which Mrs. Watley has been associated. These activities were enjoined by the Superior Court of Fulton County on May 15, 1970, and, as certain of the activities continued despite the injunction, Mrs. Watley was found in contempt of court. Kessler suggests that Mrs. Watley is engaged in a private, vindictive course of conduct aimed at harassing Kessler and attempting to illegally unionize the employees of Kessler. In light of this factual background, Kessler alleges:

"Defendants Murray, Paschall, Bostic and Wyatt have conspired to use the powers of their office within the Equal Employment Opportunity Commission for unlawful purposes by

"(a) Conspiring with the defendant Louise Watley to embark upon a course of conduct which, in light of all the facts known to them, to be [sic] *ultra vires* and solely for the purpose of aiding and abet-

ting a private and vindictive course of conduct by the defendant Watley; and

"(b) Conspiring with the defendant Watley to establish arbitrary ratios of black employees, black supervisors and black administrators; and

"(c) Conspiring with the defendant Watley to assist her in attempting to unionize the employees of plaintiff by illegal means."

The EEOC contends that the activities of the charging party and the "conspiracy" issue are irrelevant to this demand enforcement proceeding since it, like all subpoena enforcement proceedings, is summary in nature. *E.g.,* Graniteville Co. (Sibley Division) v. EEOC, 438 F.2d 32 (4th Cir. 1971); Venn v. United States, 400 F.2d 207 (5th Cir. 1968); Wurlitzer Co. v. EEOC, 50 F.R.D. 421 (N.D.Miss.1970). The Court agrees that the demand procedure here is recognized as an "abbreviated procedure", Venn v. United States, *supra,* 400 F.2d at 212 n. 12, but at the same time the Court declines to invoke its processes to enforce the demand automatically and without question. See United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed. 2d 112 (1964); United States v. Roundtree, 420 F.2d 845 (5th Cir. 1969); Venn v. United States, *supra.* The relevant statute allows the employer to base his objections to the demand upon "any failure of such demand to comply with the provisions of this subchapter or with the limitations generally applicable to compulsory process or upon any constitutional or other legal right or privilege of such [employer]." 42 U.S.C. § 2000e–9(c). The protection against overzealous or unauthorized investigation afforded the employer by § 2000e–9(c), *supra,* must be balanced against an obvious desire to expedite the processing of the charging party's complaint.

First, the Court agrees with the EEOC that the individual activities of the charging party here do not affect the issues in this proceeding nor do they impinge upon the validity of the EEOC investigation. Kessler, however, attempts to impute the conduct of Mrs. Watley to the EEOC officials named as defendants here. In this regard, Kessler first points to the prior association of Louise Watley, the charging party, with Eliza King Paschall, an EEOC official which, it is alleged, included the following:

"(a) In the early part of 1968 when Eliza King Paschall was fired as Director of the Community Relations Council of Atlanta, City officials were picketed by the Metropolitan Atlanta Summit Leadership Congress including the defendant Louise Watley.

"(b) When the efforts to have the defendant Eliza King Paschall reinstated as director of the Atlanta Community Relations Council failed, she was hired as executive director of the Metropolitan Atlanta Summit Leadership Congress.

"(c) The Metropolitan Atlanta Summit Leadership Congress then proposed another candidate for the position on the Community Relations Council; its candidate being the defendant Louise Watley.

"(d) The defendant Louise Watley was an officer and member of the Metropolitan Atlanta Summit Leadership Congress at the time the defendant Eliza King Paschall was serving as executive director of the Metropolitan Atlanta Summit Leadership Congress.

"(e) In December, 1968, Eliza King Paschall resigned her position with the Metropolitan Atlanta Summit Leadership Congress to take another job which was rumored at the time to be with the Equal Employment Opportunity Commission. At the time of her resignation, The Atlanta Journal of December 8, 1969, reported under the by-line of Harman Perry:

'Mrs. Paschall said she intends to maintain a "very close" relationship with the summit congress as a member, and "I hope to contribute even more rather than less." ' "

In its answer, the EEOC admits the relevant portions of this allegation.

As earlier noted, the Court will not attribute the conduct or actions of the individual charging party here to the EEOC for the purpose of invalidating an otherwise authorized EEOC investigation. The only fact which Kessler has alleged to connect the EEOC with the conduct of Mrs. Watley, i. e., the only fact alleged in support of Kessler's "conspiracy" argument, is the prior association of Mrs. Watley with Mrs. Paschall, an EEOC investigating officer. Such allegations of "conspiracy" raise questions concerning the validity of the EEOC investigation and are not, as the EEOC suggests, totally irrelevant in a demand enforcement procedure, "abbreviated" though it may be. To the extent that the good faith of the Commission is brought into question, the Court may consider the allegations and need look no further than the statute (42 U.S.C. § 2000e–9(c)) for a jurisdictional basis. In order to consider such allegations, however, it is not necessary to conduct a full-scale trial on the issue since the proceeding involved here is not in the nature of a conventional lawsuit. *See* Wurlitzer Co. v. EEOC, 50 F.R.D. 421, 424 (N.D. Miss.1970).[5] The Court must determine if there are sufficient factual allegations made to raise a substantial question that enforcement of the demand would be an abuse of the Court's process. The Court believes the allegations are insufficient here. The only factual allegation (the prior association of Mrs. Watley and Mrs. Paschall) which bears on the question, assuming it is true, is insufficient to elevate the issue of the Commission's good faith to a substantial question deserving of further inquiry by the Court. The other "conspiracy" allegations are either irrelevant or merely conclusory.[6]

Kessler has served certain interrogatories upon two officers of the EEOC which attempt to elicit, *inter alia,* the following type of information: facts concerning prior association of the officers with the charging party, internal operations of the EEOC, and information relative to investigation by the EEOC of other employers. As earlier noted, the Court is not required to apply the rules of discovery in demand enforcement proceedings, e. g., Rule 81(a) (3), Fed.R. Civ.P., but may allow discovery where it is necessary to provide "a meaningful adversary hearing of legitimate challenges." Wurlitzer Co. v. EEOC, *supra,* at 425; Venn v. United States, *supra.* The Court having previously determined that the factual allegations of Kessler's petition are insufficient to raise substantial questions concerning the propriety of the EEOC investigation and the formal demand, the information sought by Kessler's interrogatories is irrelevant

---

5. In such a proceeding as the one involved herein, the Court may apply the federal rules but is not required to do so. Rule 81(a) (3), Fed.R.Civ.P.; Venn v. United States, *supra* 400 F.2d at 212 n. 12; Wurlitzer Co. v. EEOC, *supra* 50 F.R.D. at 424.

6. Kessler's suggestion that Mrs. Watley and the EEOC are engaged in a conspiracy to "establish arbitrary ratios of black employees" is frivolous since the EEOC has only conciliatory, and not enforcement, powers. The reliance of Kessler on the "threat" of an EEOC officer that, if the requested information was not supplied, "he would return with all his lawyers including the Commission's Washington lawyers" in no way reflects upon the good faith of the Commission. A final allegation, that the EEOC is "conspiring with [Mrs. Watley] to assist her in attempting to unionize the employees of [Kessler] by illegal means", is merely conclusory and there are no factual allegations from which such proposition can be inferred. The allegation, throughout the petition, that there is, in fact, no evidence of any discriminatory conduct by Kessler is irrelevant in this proceeding. In a demand enforcement procedure, the Court will not inquire into the merits of the charging party's complaint. *E. g.,* Graniteville Co. (Sibley Division) v. EEOC, 438 F.2d 32 (4th Cir. 1971).

and/or privileged and the interrogatories are not necessary to provide a meaningful adversary hearing of legitimate challenges. The EEOC officers are not required to respond to the interrogatories, and Kessler's motion to compel discovery is DENIED.

 One aspect of the case with which the Court is concerned is Kessler's allegation that the information gathered in the investigation will be turned over to Mrs. Watley in violation of 42 U.S.C. § 2000e–5(a). That section provides that the charge filed with the EEOC "shall not be made public" and that "nothing said or done during and as a part of [conciliation] endeavors may be made public by the Commission without the written consent of the parties. * * * *" Kessler also relies on 42 U.S.C. § 2000e–8(e) which provides: "It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information." The EEOC admits that its investigative files will be available for inspection by the charging party's *counsel* to determine whether or not to file suit and/or to prepare for litigation.

The Court first notes that it is EEOC policy to make its investigative files available to the charging party's counsel under the circumstances described above, the Commission having determined that such regulated disclosure is not "public" within the meaning of 42 U.S.C. § 2000e–5(a) and § 2000e–8(e). See General Counsel's Opinions 9/13/65, 11/9/65 and 11/12/65, 1 CCH–Employment Practices Guide ¶ 1256.30–31; 29 C.F.R. § 1601.20. At the hearing, however, counsel for the EEOC indicated there is no restriction

imposed by the agency on the transmission of information by the charging party's attorney to others, and that there is especially no restriction on the attorney's transmission of the information obtained to the charging party. It appears that the position of the EEOC in this regard is that the question of disclosure of information by the charging party's attorney to whom the EEOC has given access to its investigative files is merely a matter of professional ethics and not an appropriate subject for EEOC regulation or restriction.[7]

At the hearing, the EEOC justified its practice on the proposition that Title VII plaintiffs, and, as a corollary, charging parties, are "private attorneys general" and the fact that a "modern day David and Goliath confrontation" exists in the situation here. Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1005 (5th Cir. 1969). Even in antitrust situations, however, in which the "private attorney general" concept has been principally enunciated, treble-damage claimants are not given access to the grand jury file—which is protected from public disclosure—but are rather remitted to the public record in the case actually prosecuted by the government to support their subsequent treble-damage action. A logical extension of the EEOC policy, which extension the Court believes would completely thwart the thrust of the nondisclosure statutes, was revealed at the Court's September 22 hearing. As the Court has ruled, under Sanchez v. Standard Brands, Inc., *supra*, that the "class action" charge was an amplification of and amendment to the original charge, the Court understands the position of the EEOC to be that the information obtained through its investigation would be made available to the attorneys of all the members of the "class", numerous though they may be, on the ground

7. Counsel for the EEOC did, however, assure the Court that as a practical matter, this particular case would be handled with the utmost caution.

that such disclosure is not "public." While the prospect that each member of a large "class" would have an attorney is obviously unlikely, the result is entirely consistent with the EEOC disclosure policy.

The Court is well aware that great deference has been, and should be, given to the agency's own interpretation of the statutes and regulations under which it functions. *E.g.*, Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158 (1971). Where questions of the agency's own jurisdiction or power are concerned, however, any agency interpretation of the relevant statute which extends the powers conferred upon the agency by Congress must be strictly scrutinized by the Court. The EEOC policy and regulation here clearly confer powers upon the agency which were specifically withheld by Congress, and the Court will not concur in the Commission's proposed disclosure of investigative material to the charging party's attorney. The Court rules that 42 U.S.C. § 2000e–5 (a) and 42 U.S.C. § 2000e–8(e) preclude the EEOC from disclosing information obtained through its investigation to the charging party, the charging party's attorney, or the petitioner here, prior to institution of court proceedings under Title VII of the Civil Rights Act.

To summarize, petitioner's motion to compel discovery is denied; petitioner's motion to set aside the demand is denied; respondent's motion to enforce the demand is granted in accordance, however, with the limitations specified in this order. Kessler shall have 30 days from the filing of this order to provide the information sought and to otherwise comply with the terms of this order.

The petition and counter petition are dismissed, jurisdiction being retained solely to insure compliance with the terms of this order.