**H. KESSLER & COMPANY, Plaintiff-Appellee-Cross Appellant,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY et al., Defendants-Appellants-Cross Appellees.**

No. 72–1082.

United States Court of Appeals, Fifth Circuit.

July 31, 1972.

Rehearing En Banc Granted Sept. 26, 1972.

---

Joseph Ray Terry, Jr., Regional Atty., EEOC, Atlanta, Ga., John DeJ. Pemberton, Acting Gen. Counsel, David Zugschwerdt, Acting Chief, Trial Section, Julia Cooper, Chief, Appellate Section, EEOC, Washington, D. C., for defendants-appellants.

Cleburne E. Gregory, Jr., Alexander Cocalis, Allen I. Hirsch, Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, COLEMAN and CLARK, Circuit Judges.

PER CURIAM:

The full background and all contentions raised by the parties on this appeal are set out in the opinion of the district court, 53 F.R.D. 330 (N.D.Ga.1971), and therefore need not be repeated here. We affirm in all respects and deem only one issue to merit further explication.

In the course of its opinion, the district court stated:

> The Court rules that 42 U.S.C. § 2000e-5(a) and 42 U.S.C. § 2000e-8(e) preclude the EEOC from disclosing information obtained through its investigation to the charging party, the charging party's attorney, or [the respondent to the charges], prior to institution of court proceedings under Title VII of the Civil Rights Act.

The pertinent text of the cited sections of the Act is set out in the margin.[1]

The EEOC contends that Congress did not intend to prohibit the making of such disclosures to the directly interested parties and their attorneys, as the

---

1. If the Commission shall determine, after . . . investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such endeavors may be made public by the Commission without the written consent of the parties, or used as evidence in a subsequent proceeding. 42 U.S.C.A. § 2000e-5(a) It shall be unlawful for any officer or employee of the Commission to *make public in any manner whatever* any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. (emphasis supplied) 42 U.S.C.A. § 2000e-8(e)

Commission might deem appropriate. What little legislative history there is on this point is simply too general to be helpful. The EEOC argues that to include the parties and their attorneys within the non-disclosure provisions would be antagonistic to the requirement of furnishing a copy of the charge to the respondent and could conceivably prevent furnishing a copy of his own charge to the charging party. Of course the prohibition need not be taken to such a ridiculous extreme. In the case of disclosure to the respondent, the Act *mandates* service of the charge, and to that extent constitutes an express exception to the non-disclosure provisions; in the case of the charging party receiving a copy of his own charge, nothing which is a mere reiteration of that which he himself originated could constitute a disclosure or publication. Nor do we find the language in § 2000e–5(a) which permits public disclosure with the consent of the parties, to be supportive of the EEOC's position. We reject the reasoning which goes: if there is authority for things said and done in conciliation proceedings being disclosed with the consent of the parties, how can that consent be obtained without making known to such parties what it is they are asked to consent to release? In those instances where the EEOC conducts conciliation efforts with only one party and neither the opposite party nor his attorney are participants, they are not parties whose consent to disclosure of anything said or done is needed.[2]

■■ We do not agree that limiting publication of information to the parties, as well as the general public, hinders the function or purpose of the statute. Rather, these portions of the Act are intended to insure that those direct-ly involved in the conciliation process can fully and in good faith participate therein, uninhibited by any threat that their statements and actions will be released to anyone not otherwise privy thereto. Obviously, there are many times when the charging party may be the very person to whom a company most fears any pre-suit release of information. Had Kessler not been apprehensive that the data it made available to the EEOC would in turn be surrendered to Mrs. Watley and improperly publicized by her, it is doubtful that the present suit would have intruded itself into the courts. And it was that apprehension, well-founded as we view the record, which has served to completely thwart the EEOC's *nonjudicial* investigative role, and has sabotaged any hope for "informal methods of conference, conciliation, and persuasion." 42 U.S. C.A. § 2000e–5,(a), *supra* n. 1.

If voluntary compliance is to remain the touchstone for settlement of alleged violations of this Title of the Civil Rights Act, then the Act's assurance to parties that information transmitted in confidence will not be betrayed and will not be disclosed to the public *"in any manner whatever"* must remain absolute. Any exceptions to this assurance provided for in EEOC practices and regulations, notwithstanding the great deference owed these,[3] will not be followed. *See* Espinoza v. Farah Manufacturing Co., 462 F.2d 1331 (5th Cir. 1972). The district court's judgment is

Affirmed.

TUTTLE, Circuit Judge (concurring in part and dissenting in part):

With deference to the views of my colleagues, while I fully concur with that part of the per curiam opinion which af-

2. Moreover, even were the "consent of the parties" provision of § 2000e–5(a) construed to guarantee the charging party access to the results of conciliation efforts, it would not follow that the *investigative data* previously obtained by the EEOC would likewise be available. This circuit has distinguished between these two separate types of information, and has held § 2000e–5(a) to apply only to the former. Smith v. Universal Services, Inc., 454 F.2d 154, 156 n. 1 (5th Cir. 1972).

3. Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158, 165 (1971).

firms the judgment of the trial court, I am unable to agree with respect to the interpretation placed by the trial court, and by the majority here, on Sections 706(a) and 709(e) of Title 7, 42 U.S.C. A. §§ 2000e–5(a) and 2000e–8(e).

I agree, of course, with the majority that we are required to construe the language of the statute in order to ascertain whether the Commission's policy of supplying "information" to counsel for the charging party prior to the filing of any court proceeding, violates these sections of the statute. In order to interpret the language which denies to the Commission the right to publicize anything "said or done during and as a part of such endeavors [the investigation by the Commission]," Section 706(a), and from publicizing "in any manner whatever any *information* obtained by the Commission pursuant to its authority under this section," Section 709, we must undertake to consider what the Commission's function is as outlined by the provisions of Title VII of the Civil Rights Act.

In brief, the employer contends that it would be a violation of the mandate of Congress prohibiting a publication of "information" for the Commission to tell either the charging party or his counsel the facts which the Commission investigator discovered by having access to the books and records of the charged employer. It is to be noted that we are not here dealing with a contention by the Commission that it should have the right to disclose "anything said or done during and as a part of the Commission's endeavors" to conciliate. We are dealing rather with the right of the Commission to inform the charging party himself or his counsel, if he has been able to engage one, without any more information than can be furnished him by the charging party, only such "information" as may have been obtained by the Commission during its efforts of conciliation and during its investigation.

Section 706(a) describes the principal functions of the Commission—receiving and investigating charges of discrimination and attempting conciliation. The pertinent part of this Section reads as follows:

"Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this title has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the 'respondent') with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as a part of such endeavors may be made public by the Commission without the written consent of the parties*, or used as evidence in a subsequent proceeding. Any officer or employee of the Commission, who shall make public in any manner whatever any information in violation of this subsection shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned not more than one year." (Emphasis added.)

If this section stood alone it would appear that the prohibition against making public "any information in violation of this subsection" would relate only to any person who made public what was prohibited above, that is to say, information about anything that had been "said or done during and as a part of such en-

deavors" and thus not reach the point with which we are here concerned—that is, the making available to counsel or the charging party of simple factual information obtained by the Commission.

However, there is a further section, Section 709, which in subsection (e) provides as follows:

"It shall be unlawful for any officer or employee of the Commission *to make public* in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this title involving such information. Any officer or employee of the Commission who shall make *public* in any manner whatever any information in violation of this sub-section shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000 or imprisoned not more than one year." (Emphasis added.)

I would agree with what may be primarily in the minds of the majority—that is to say I would agree that it would be improper for the Commission to make public anything "said or done" during the investigation or attempts to conciliate. Our disagreement comes from the holding by the majority that Section 709 prohibits the disclosure to the charging party or his counsel of any "information" obtained by the Commission during the performance of its investigatory and conciliatory endeavors.

In light of the purpose of the law, and recognizing the fact that the complaining person is, almost by definition, a person in impecunious circumstances, and bearing in mind the fact that "the importance of the private litigant in the context of Title VII cannot be over-emphasized," Sanchez v. Standard Brands, Inc., 5 Cir., 431 F.2d 455, 460, fn. 1, and bearing in mind further the very limited opportunity that is given to the charging party to file suit after the EEOC notifies him that it has been unable to obtain voluntary compliance (30 days) it

is obvious that the charging party literally needs all the help he can get in order to obtain the aid of counsel, convince him that a right of action truly exists, with evidence to support it, and prepare and file a suit within the statutory period. It is within this context that we must consider whether the charging party himself, or his counsel, is, within the intendment of the Act, a member of the "public." The current regulations dealing with this proposition provide as follows:

"Neither a charge, nor information obtained pursuant to section 709(a) of Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to sections 709(c) and (d) of said Title, shall be made matters of public information by the Commission prior to the institution of any proceedings under this Title involving such charges or information. *This provision does not apply to such earlier disclosures to the charging party, the respondent, witnesses, and representatives of interested Federal, State and local agencies as may be appropriate or necessary to the carrying out of the Commission's functions under the Title* nor to the publication of data derived from such information in a form which does not reveal the identity of the charging party, respondent, or person supplying the information." (Emphasis supplied.)

The Commission's policy with respect to disclosure to a charging party's counsel, which would be authorized under this regulation, has been stated by a memorandum to all Commission field directors and field attorneys by the then General Counsel on September 15, 1970. It states the policy to be as follows:

"The investigator's report in a case may be examined by counsel for the charging party after expiration of the statutory period for investigation and conciliation (60 days from the date of filing with the Commission) to *determine whether or not, in counsel's*

*opinion, the facts justify the commencement of a civil action* pursuant to Section 706(e) *and, if so, to obtain information relevant to drafting the complaint.* Before a report is made available, *counsel must agree that it will not be used for any other purpose* and that the information contained therein will not be disclosed except to the extent necessitated by filing the complaint." (Emphasis supplied.)

The legislative voyage of Title VII was not an uninterrupted one. The two Houses of Congress differed in their approaches to the question, and the ultimate result was, as is much legislation, a compromise. Nevertheless, the scant legislative history that is available with respect to these sections, it seems to me, supports the position taken by the Commission in the adoption of its regulation quoted above. See Miller v. International Paper Co., 5 Cir., 1969, 408 F.2d 283. Senator Humphrey introduced the compromise amendment which was enacted into law. In his statement it seems to me that he undertook to give a gloss upon the amendment which would permit such disclosure as is necessary to the carrying out of the Commission's duties under the statute—a gloss which, it would seem almost unnecessary to add, should be found in the interpretation of any Act of Congress. Senator Humphrey's statement was as follows:

"Provisions preserving the confidentiality of Commission procedures have been added to Sections 706(a) and 709(e). Section 706(a) provides that a charge filed with the Commission shall not be made public and provides a criminal penalty for a Commission employee who violates this rule. Section 709(e) prohibits the Commission and its employees from making public information obtained by compulsory process in the course of litigation arising under the title.

*"It should be noted that this is a ban on publicizing and not on such disclosure as is necessary to the carry-*ing out of the Commission's duties under the statute. Obviously, the proper conduct of an investigation would ordinarily require that the witnesses be informed that a charge had been filed and often that certain evidence had been received. Such disclosure would be proper. The amendment is not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but *rather is aimed at the making available to the general public of unproven charges."* 110 Cong. Rec. 12723. (Emphasis supplied.)

It is impossible for me to understand how an individual seeking relief from an employer whom he had charged with having discriminated against him on account of race, religion or national origin, could conceivably amass the statistical information alone that would be necessary to know whether he had anything more than a strong suspicion without access to "information" concerning the actual employment practices and facts relating to promotions, terminations, etc. One must necessarily ask the question, "How could such a charging party persuade a lawyer to handle his case without having available some of the 'information' which, under the provisions of the statute, will come into the investigatory files of the Commission?" The courts of this circuit have already found that competent lawyers are not eager to enter the fray on behalf of a person who is seeking redress under Title VII. This is true even though provision is made for the payment of attorneys' fees in case of success. In the case of Petete v. Consolidated Freightways, D.C.N.D.Tex., 1970, 313 F.Supp. 1271, the Honorable Sarah Hughes made the finding: "Further complicating plaintiff's problem has been the reluctance of the attorneys she has approached to undertake the specific and complex challenges of a Title VII lawsuit which are not common to more frequently litigated areas of the law." To the same effect, see the finding of

the District Court for the District of Kansas in Edmonds v. E. I. du Pont de Nemours & Co., 315 F.Supp. 523, 524. See also the opinion of this court in Sanders v. Russell, 5 Cir., 1968, 401 F.2d 241, where we discussed the difficulty of finding adequate numbers of lawyers available and with the competence to handle civil rights litigation in general.

I think, in sum, that the prohibition against making "public" "information" obtained by the Commission during the investigatory phase was not intended to and should not apply to the parties themselves or their counsel. I think, rather, that what was prohibited was making these facts available to the public generally. I think the term "by any manner whatever" relates to the means of publication rather than the persons to whom the statute applies. I would construe the law as permitting the disclosure of information to counsel for the party prior to the filing of a suit under the limitations stated in the General Counsel's memorandum which is quoted above.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

It is ordered that the cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk shall set a briefing schedule for the filing of supplemental briefs.