**Almeda Victoria BALL, Plaintiff,**

v.

**RIDGEWAY ENTERPRISES, INC., Defendant.**

Civ. A. No. 76–H–399.

United States District Court, S. D. Texas, Houston Division.

Oct. 15, 1979.

---

Craig A. Washington, Craig A. Washington & Assoc., Houston, Tex., for plaintiff.

Tom M. Davis, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

This case was tried before the Court on July 9 and 10, 1979. Two witnesses testified, Ms. Almeda Ball, the plaintiff, and Mr. Dave Dillard, the supervisor of the Supply Department at Ridgeway Enterprises, Inc., who was called as an adverse witness by the plaintiff. The plaintiff, an employee of Ridgeway Enterprises, Inc., from August 27, 1973, to May 1, 1974, alleged that she was fired because of her race in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended. At the conclusion of the plaintiff's case, the defendant moved to dismiss the action under Rule 41(b), Fed.R. Civ.P. The Court denied the motion. The defendant, offering no testimony, then rested its case. Pursuant to Rule 52, Fed.R. Civ.P., the Court hereby enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The plaintiff, Almeda Victoria Ball, is a black female, a citizen of both the United States and the State of Texas, and a resident of Houston, Texas.

2. The defendant, Ridgeway Enterprises, Inc., is a Texas corporation which does business in the State of Texas and the City of Houston and is an employer within the meaning of 42 U.S.C. § 2000e et seq. and subject to the proscriptions of 42 U.S.C. § 1981.

3. The plaintiff filed a charge of discrimination under oath with the Equal Employment Opportunity Commission on May 2, 1974, naming the defendant as respondent. The Commission issued its Notice of Right to Sue on February 13, 1976. After receiving that Notice, the plaintiff commenced this action on March 10, 1976.

4. The plaintiff was hired by the defendant as a kardex operator in its Supply Department on August 27, 1973. Between November 28 and December 3, 1973, the plaintiff was transferred to the position of cut sheet wrapper in the defendant's Manufacturing Department. On May 1, 1974, she was laid off by the defendant.

5. The plaintiff worked as a kardex operator from August 27, 1973, to approximately November 28, 1973, at $2.15 an hour. During that time, she performed admirably. She was never late, never missed a day, and did not receive a single complaint, either written or oral, about her job performance.

6. On approximately November 28, 1973, the plaintiff was approached by the Supply Department supervisor, Mr. Dave Dillard. Mr. Dillard showed her a sales invoice, pointed out certain handwriting on the invoice, and asked if it was her handwriting. The plaintiff said that it was not and tried to show Mr. Dillard that her handwriting differed greatly from the handwriting on the invoice. She urged Mr. Dillard to check with other employees in the department whose duties included writing on sales invoices. Mr. Dillard did not look at the plaintiff's handwriting sample. A few minutes later, however, he told the plaintiff that it was her handwriting and that she was fired. At this point, the plaintiff became quite upset. She insisted that a mistake was being made and that Mr. Dillard should check with others. She began hyperventilating and soon became so upset that she fainted. While an ambulance was called, the plaintiff was revived. Before she was loaded onto the ambulance, Mr. Dillard told the plaintiff that he had changed his mind, that she was not fired, and that she should report back to work as soon as she was better.

7. It was the plaintiff's uncontradicted testimony that her handwriting was not on the sales invoice in question. Mr. Dillard coud neither confirm nor deny this testimony. Although he recalled firing the plaintiff, seeing the plaintiff faint, and rescinding the firing, he could not remember whether any specific incident had occurred that day to cause him to fire her.

8. Soon after the plaintiff was sent to the hospital, Mr. Dillard went to the supervisor of the defendant's Manufacturing Department. He arranged to have the plain-

tiff transferred to the position of cut sheet wrapper in that department.

9. Throughout the time of the plaintiff's employment, the defendant maintained racially segregated work forces. The Supply Department consisted of fifty to sixty employees, of whom fifteen to twenty were black. The Sales Office, the specific division of the Supply Department in which the plaintiff worked, consisted of twelve employees, ten of whom, the salesmen and desk workers, were white, and two of whom, the kardex operators, were black. The Manufacturing Department to which the plaintiff was transferred, consisted of fifty to sixty employees, of whom only two were white.

10. Throughout the time of the plaintiff's employment, the defendant had no objective evaluation procedures. Transfers and promotions depended almost entirely on the subjective evaluation of supervisors. This practice, as the Fifth Circuit has recognized, provides "a ready mechanism for discrimination against Blacks much of which can be covertly concealed and, for that matter, not really known to management." *Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972).

11. Mr. Dillard is a white male. After he transferred the plaintiff to the Manufacturing Department, he hired a white female to replace her as a kardex operator in the Supply Department. This left only one black employee in the Sales Office.

12. Three reasons were offered to justify the plaintiff's firing and subsequent transfer. First, Mr. Dillard testified that he had decided to fire and then transfer the plaintiff because he felt that she was not intelligent enough to adequately operate the kardex machine. This testimony was not convincing. To begin with, Mr. Dillard and the plaintiff both testified that the kardex machine was relatively easy to operate, requiring no specialized training and taking only a few minutes to learn how to run. In addition, Mr. Dillard admitted that he had never registered any complaint about the plaintiff's job performance. Finally, the plaintiff had successfully com-

pleted high school and had a two year degree in Business Administration from St. Philips Junior College, while Gilda Citizen, the other kardex operator, who was neither fired nor transferred, had never completed high school.

Second, Mr. Dillard testified that the plaintiff was, generally not doing a good job and, more particularly, that he remembered receiving some phone calls about back orders not being filed properly. He was unable, however, to recall any specific example of inadequate job performance by the plaintiff and admitted that he had never told her that she was not doing a good job.

Third, Mr. Dillard had written on the Payroll Change of Status Form, defendant's Exhibit 4, that the plaintiff was being transferred because the Manufacturing Department would be "better able to utilize her abilities." At trial, however, Mr. Dillard said that he did not know what he had meant by this phrase. The evidence clearly indicated that the plaintiff could better utilize her abilities as a kardex operator than as a cut sheet wrapper.

13. Having examined the evidence and having had a chance to observe at first hand the witnesses' demeanor and credibility, it is my conclusion that the plaintiff was originally fired and then transferred because of her race. The first firing and subsequent transfer were acts of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The reasons given for those acts were simply pretexts for that discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972).

14. Although the plaintiff was given a ten cent per hour raise along with her transfer to the position of cut sheet wrapper, she testified that when she returned to work on December 3, 1973, she felt that she had been demoted. To begin with, her new position was not as intellectually demanding. Cut sheet wrappers simply counted sheets of paper, wrapped them, and stacked

them on shelves, while kardex operators worked with a kardex machine and were required to perform at least simple tasks of mathematics—addition, subtraction, multiplication, and division. In addition, her new job required more physical exertion. The cut sheet packages were heavy and often had to be lifted to high shelves. Finally, cut sheet wrappers wore casual clothes to work, while kardex operators, being part of the Sales Office, were required to dress, as the plaintiff preferred, more formally. The plaintiff testified that she would have preferred to remain a kardex operator, even if it meant earning ten cents less per hour.

15. The plaintiff worked as a cut sheet wrapper from December 3, 1973, until May 1, 1974. During that time, the plaintiff not only performed her job capably, but helped to train other cut sheet wrappers. She received no complaints about the quality of her work.

16. On January 27, 1974, Ridgeway Enterprises, Inc., shifted to a four day, ten hour per day, work week. The plaintiff, like many other employees, received a ten cent per hour pay raise to compensate for lost overtime resulting from the new work schedule.

17. On May 1, 1974, the plaintiff was called into the office of Mr. Blaylock, the supervisor of the Manufacturing Department. Mr. Blaylock told her that she was being laid off because there was simply not enough work to be done. He gave her a final pay check and a credit union check.

18. The plaintiff was the first person laid off in what proved to be a massive Manufacturing Department layoff. From May 1, 1974, to November 1, 1974, approximately fifty percent of the workers in the Manufacturing Department were laid off because of lack of work, the bulk of them being laid off in October. During that time, no workers in the Supply Department were laid off due to lack of work.

19. Mr. Dillard contended that he did not know of the impending layoffs in the Manufacturing Department when he

transferred the plaintiff there. In addition, the defendant contended that it had a variety of valid business reasons for picking the plaintiff as the first person to lay off. These contentions are simply irrelevant to resolution of the Title VII issues in this case. Having been discriminatorily transferred from the Supply Department to the Manufacturing Department, see Finding of Fact No. 10, the plaintiff is entitled to be "made whole." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Whether she was laid off first or last, she must be "so far as possible, restored to [the] position where [she] would have been were it not for the unlawful discrimination." *Albemarle, supra,* at 421, 95 S.Ct. at 2373, (quoting from 118 *Cong. Rec.* 7168 [1972]). No one was laid off because of lack of work in the Supply Department. "Were it not for the unlawful discrimination," the plaintiff would have been there.

20. The defendant's contentions in regard to the layoff are relevant to the resolution of the § 1981 issues in this case. In Texas, a two year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5526 (1958), is applicable to § 1981 claims. *Page v. U.S. Industries, Inc.,* 556 F.2d 346, 355 (5th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). Furthermore, the filing of a Title VII claim with the EEOC does not toll the running of the § 1981 statute of limitations. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed. 295 (1975). The first firing and subsequent transfer of the plaintiff took place between November 28 and December 3, 1973. The complaint in the present suit was filed on March 10, 1976, more than two years after those dates. Thus, application of § 1981 to the first firing and subsequent transfer is barred by the statute of limitations.

Considering all of the evidence presented by the parties, the plaintiff failed to establish that the defendant violated 42 U.S.C. § 1981 by laying her off on May 1, 1974. There were some questions raised about the reasons for the layoff. For ex-

ample, it was established that the plaintiff was the first person laid off, although other cut sheet wrappers had less seniority. In addition, the plaintiff testified that she had heard that her layoff was the result of complaints by a white co-worker, who resented the plaintiff's superior education. But there was no evidence that the defendant retained any white cut sheet wrappers with less seniority than the plaintiff and, more generally, there was simply insufficient evidence to prove the layoff resulted from purposeful racial discrimination in violation of 42 U.S.C. § 1981. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), *Williams v. DeKalb County*, 582 F.2d 2 (5th Cir. 1978).

## CONCLUSIONS OF LAW

1. Jurisdiction in this Court is proper pursuant to 42 U.S.C. §§ 1981 and 2000e *et seq.*. All issues of discrimination discussed in this opinion are like or related to those raised in the plaintiff's EEOC charge and are within the scope of the investigation which could reasonably have been expected to grow out of that charge. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

2. The plaintiff established that she was the victim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, pursuant to the standard of proof set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972).

3. The plaintiff failed to establish that she was the victim of purposeful racial discrimination in violation of 42 U.S.C. § 1981, *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), *Williams v. DeKalb County*, 582 F.2d 2 (5th Cir. 1978), within the relevant statute of limitations. *Page v. U. S. Industries, Inc.*, 556 F.2d 346 (5th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978).

4. The plaintiff is entitled to all lost wages, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), appropriate equitable relief, and, according to the guidelines set out in *Johnson*

*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), attorney's fees, 42 U.S.C. § 2000e–5(k). The parties will have thirty (30) days to submit to the Court an agreed order outlining the relief to be granted in the present case. If they are unable to come to an agreement by that time, a hearing to determine the appropriate relief will be set.

5. In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are adopted as such. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are adopted as such.