# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00867-CV

**Sonya Thorn Lopez, Appellant**

**v.**

**Texas State University, Sherri H. Benn, and Stella Silva, Appellees**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
## NO. 10-0901, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

Lopez asserts this sequence of events: she fired Johnson; her supervisors reduced her pay; she filed a pay grievance with TSU; and soon after, she was fired. Although I concur with most of the majority's decision in this case, I write separately because I respectfully dissent from the majority's conclusion that Lopez's claim that TSU retaliated against her for filing a pay grievance is not factually related to the retaliation claim for firing Johnson stated in her EEOC charge and thus Lopez failed to exhaust her administrative remedies for the pay-grievance claim. I also respectfully dissent from the majority's conclusion that intake questionnaires should be considered to assist the court in determining the scope of the charge only if (1) the facts set out in the questionnaire are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation. Instead, I would follow the approach of those federal courts that have considered all the information

provided by the employee to the agency when determining whether a particular claim asserted in an employee's lawsuit would be within the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination. As a result, I would also remand to the trial court Lopez's claim that TSU retaliated against her for filing a pay grievance.

Lopez's EEOC charge asserted that she was wrongfully discharged from her position in October 2009 and listed the allegedly pretextual reasons for her discharge. She explained why she believes that the reasons she was given for her discharge were pretextual: "I have not received any prior warnings or counseling; during July 2009, I received a bonus, while during September 2009, I received a merit rate increase." She then stated what she believes to be one of the real reasons she was discharged: "During September 2009, it was my misfortune to have fired the brother of my department director." The majority holds that this factual statement would reasonably give rise to an administrative investigation of retaliation for Lopez's decision to terminate Johnson's employment, but not her retaliation claim for filing a pay grievance, which it concludes is not factually related to any of the claims stated in the charge.

I respectfully disagree with the majority's conclusion that Lopez's retaliation claim for filing a pay grievance is not a "factually related claim[] that could reasonably be expected to grow out of the Commission's investigation of the charge." *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)). An employment-discrimination claim "may be based . . . upon any kind of discrimination *like or related to* the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of

2

discrimination." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983) (emphasis added). In *Fellows*, the Fifth Circuit, emphasizing the liberal construction given EEOC charges, held that an employee's wording of her claims in the charge that she was paid less and her applications for various superior positions at a restaurant were denied because of her gender supported a subsequent class action for women subjected to the same discrimination or to discrimination like or related to the discrimination she described. *Id.* In addition, the court held that an EEOC investigation of class discrimination against women could reasonably be expected to grow out of the employee's allegations in her initial EEOC charge. *Id.*

In this case, an administrative investigation of retaliation for terminating Johnson's employment necessarily would encompass the retaliatory actions that Lopez alleges TSU took against her. Lopez alleges that *after she terminated Johnson*, her supervisors retaliated against her by reducing her pay, leading her to file a pay grievance.[1] She alleges that she was then fired. Consequently, I conclude that Lopez exhausted her administrative remedies for her pay-grievance claim by asserting her retaliation claim for firing Johnson in the charge.[2]

---

[1] When considering a trial court's order on a plea to the jurisdiction, in addition to the evidence relevant to the jurisdictional question, we consider the plaintiff's pleadings and construe those pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004).

[2] In addition, Lopez asserts in her petition that TSU retaliated against her because of her opposition to Johnson's hiring, as well as her opposition to the pressure she felt to hire other African-American applicants even after explaining to her supervisors that the population that their program serves is predominantly Hispanic. While she did not include her allegation that she was pressured to hire African-American applicants over Hispanic applicants in her intake questionnaire, it provides relevant context to the environment in which her hiring and firing of Johnson occurred.

3

But even if I had not concluded that Lopez's retaliation claim for filing a pay grievance is "like or related to" her retaliation claim for firing Johnson, unlike the majority, I would consider the intake questionnaire to determine whether the pay-grievance claim would be within the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charge. In this case, Lopez provided information in her intake questionnaire that supplements the factual statement in her charge about her termination of Johnson's employment. She asserted that she filed a grievance on September 17 for reduction of pay through TSU-San Marcos's Human Resources department, and after that, her supervisors harassed her and discriminated against her in a number of ways. She stated that she had reached the third step of TSU's grievance process on the Friday before she was fired on Monday, October 19. Lopez alleged that many of the negative behaviors started when she was told to hire Johnson, the brother of one of her supervisors. She also explained that she was not aware that Johnson was her supervisor's brother when she told her supervisors that he was not performing the duties and was not qualified for the position and that the human-resources department had told her to terminate his employment.

In my view, courts should examine all the information available to the agency when analyzing the investigation's reasonably expected scope, and I would consider this information provided by Lopez to the EEOC when deciding whether her pay-grievance claim reasonably would come within the scope of the agency's investigation. Consequently, I disagree with the majority's decision to adopt the more narrow approach of those courts that consider intake questionnaires only if (1) the facts set out in the questionnaire are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation.

4

The first prong of the majority's approach merely restates the question of what claims are properly within the lawsuit's scope, adding nothing to the well-settled principle that the employee's suit "may be based . . . upon any kind of discrimination like or related to the charge's allegations." *Fellows*, 701 F.2d at 451. This prong of the approach does not provide guidance on specific situations when intake questionnaires should be considered. Instead, it reiterates the existing limit on claims not included in the original charge that may properly be included in the employee's lawsuit.

The second prong of the majority's approach unfairly limits what information a court should consider when determining what allegations would reasonably be expected to grow from the agency's investigation. Courts should examine all the information *presented to the agency* to make this determination. *Silva v. Chertoff*, 512 F. Supp. 2d 792, 812, 819-20 (W.D. Tex. 2007) (examining all documents provided to EEOC by employee but deciding allegations in documents described only employee's asserted physical disability and employer's failure to provide reasonable accommodation for it and did not present sufficient factual predicate for alternative argument that employer discriminated against employee because it erroneously regarded him as disabled); *see also Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir. 1994) (examining all statements provided to EEOC by plaintiff when determining that plaintiff's claim that she suffered disparate treatment based on her gender would reasonably be expected to be part of EEOC's investigation even though her charge alleged sexual harassment and retaliation for grievances filed).[3] Courts should consider

_____

[3] The majority expresses concern that considering the intake questionnaire effectively treats the intake questionnaire as an independent charge instead of using it as a mere supplement to claims stated in the charge or reasonably related claims. Those courts that have examined all the information available to the agency have used that information to assist them in determining whether the reasonable scope of the agency's investigation would have included a challenged claim, not to

all the information presented to the agency because "the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC"; it is not filed as a preliminary to a lawsuit. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Within the relevant statutory scheme, a suit is not filed until the EEOC has had an opportunity to obtain voluntary compliance, and thus the suit is "much more intimately related to the EEOC investigation than to the words of the charge" that triggered the investigation. *Id.* While the purpose of serving employers with complaints is to provide them with fair notice of the existence and nature of the charges against them and to facilitate resolution of disputes without court action, that purpose must be balanced with the competing policy of construing the scope of EEOC complaints liberally because most complaints are initiated pro se. *See Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006). As the Fifth Circuit has established:

> the conciliation purposes of the act must yield to its more basic purposes to protect persons against employment discrimination, indicating that protecting a merely theoretical right to conciliation (that might not be accepted) by dismissing a subsequent suit, is outweighed by more fundamental purposes of the Act to afford the possibility of administrative and judicial relief to employees who are subject to employment discrimination.

---

allow the assertion of an unrelated claim. *See Silva v. Chertoff*, 512 F. Supp. 2d 792, 812, 819-20 (W.D. Tex. 2007) (examining all documents but deciding allegations in documents did not present sufficient factual predicate for alternative argument); *see also Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir. 1994) (examining all statements provided to EEOC by plaintiff and deciding that those statements "presented a sufficient predicate upon which one reasonably would expect the agency to investigate a disparate treatment claim" and raised inferences supporting plaintiff's claim in her charge that she "was harassed because of [her] sex, female"). Thus, the majority's concern that the intake questionnaire will effectively be treated as a charge by courts that examine supplemental information is unwarranted.

*Fellows*, 701 F.2d at 450 n.3 (addressing concern that alleged lack of notice of class basis for discrimination charges deprived EEOC of opportunity to conciliate class grievances).[4]

The second prong of the majority's approach too heavily favors the employer's interest over the employee's, especially in cases in which the employee is pro se at the time the intake questionnaire is filled out, the charge is filed, and the request for a right-to-sue notice is made. Furthermore, in a case like Lopez's, in which the EEOC performed *no investigation*, the second prong—requiring the employer to have had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation—makes no sense. In Lopez's case, the EEOC performed no investigation and issued the right-to-sue notice only a few weeks after the charge was filed and served upon the employer.[5] The charge's ostensible purpose of giving the EEOC and the employer

---

[4] The majority relies upon an unpublished Fifth Circuit opinion to distinguish *Clark* and for the proposition that a core function of the charge requirement is notice to the employer. *See Harris v. Honda*, 213 F. App'x 258, 262 (5th Cir. 2006) (unpublished and not precedent under 5th Cir. R. 47.5.4) (per curiam). Although I do not disagree that notice to the employer is one purpose of the charge, I disagree with the court's characterization in *Harris* that notice to employers of claims of discrimination is "the major underlying purpose of the exhaustion requirements." *Id.* I note that the case upon which the court relied for this proposition in fact stated that "a fundamental purpose of the charge is to trigger an investigation by the EEOC" and that the need for courts to construe EEOC charges "with the utmost liberality. . . . stems from the framework of Title VII and its goal of encouraging voluntary compliance through EEOC conciliation." *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981) (holding that charges failed to allege specific conduct implicating international labor unions and thus did not trigger liability for those unions), *vacated on other grounds*, 456 U.S. 955 (1982).

[5] No evidence has been presented that indicates the TWC's civil rights division conducted an investigation of the claims made by Lopez in her EEOC charge before issuing a right-to-sue notice. *See* Tex. Labor Code Ann. § 21.0015 (West 2006) (authorizing TWC's civil rights division to exercise Commission on Human Rights' powers and duties under chapter 21 of labor code); *id.* § 301.152 (West 2006) (establishing civil rights division as independent division in TWC responsible for administering chapter 21 of labor code). In the affidavit that Lopez submitted in support of her response to the plea to the jurisdiction, she avers that she had two unemployment hearings before the TWC and submitted additional documentation to the TWC describing her

an opportunity to resolve the dispute is irrelevant when no agency investigation or conciliatory process occurs before the employee files suit. Without evidence of any agency investigation or any conciliatory process, the employer's need for pre-suit notice of the claim is difficult to justify. At this early stage of the litigation, it seems inequitable to deny a day in court to a plaintiff who was pro se when the intake questionnaire and charge were filed, especially when the agency and the employer engaged in no process to attempt to resolve the plaintiff's claims without resort to the courts. As Justice Goldberg explained it: "[S]urely Goliath should not be allowed to fell David with the help of a club fashioned from forms and legal technicalities. The most elementary principles of justice require us to remove this club and compel a battle on the merits of the controversy." *Sanchez*, 431 F.2d at 467.

Furthermore, although the record before us is limited because the trial court dismissed the case on a pre-discovery motion, Lopez alleges facts in her petition and her affidavit that indicate that TSU had actual knowledge of the *incidents* underlying her claim that TSU took retaliatory action against her because of her protected activity. *See Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 774 (S.D. Tex. 2009) (relying on handwritten notes attached to EEOC charge to support hostile work environment claim because summary-judgment evidence demonstrated that employee had complained to employer about several incidents described in notes); *see also Martin v. Tyson*

---

race-discrimination and retaliation claims. TSU points out that an investigation for unemployment benefits is not the same as an investigation of allegations of discrimination and retaliation. A different division of the TWC handles unemployment claims. There is no evidence that the TWC's civil rights division conducted any investigation into Lopez's allegations that TSU engaged in unlawful employment practices after the EEOC issued its right-to-sue notice and before the TWC issued a right-to-sue notice at her counsel's request. The TWC's right-to-sue notice is not in the appellate record. Lopez also averred in her affidavit that she asked the EEOC about amending her charge after she had hired counsel, and the EEOC told her that she could not do so because the agency had already issued her right-to-sue notice.

8

*Foods, Inc.*, No. H-10-2047, 2011 WL 1103657, at *3-4 (S.D. Tex. Mar. 23, 2011) (relying on facts stated in employee's demand letter and EEOC intake questionnaire to charge employer with knowledge of facts supporting employee's hostile work environment claim). Whether TSU had actual knowledge that Lopez filed a pay grievance asserting that her supervisors reduced her pay after she terminated Johnson is a relevant jurisdictional fact under the approach adopted by the majority. TSU argues on appeal, and the majority agrees, that the jurisdictional facts in this case are undisputed. TSU has argued only that the charge did not provide it with notice of Lopez's retaliation claims, not that it had no actual knowledge of the events leading to Lopez's pay grievance. For this reason, even under the majority's approach, we should consider Lopez's intake questionnaire to determine whether her pay-grievance claim is related to claims stated in her charge and she thus adequately exhausted her administrative remedies for that retaliation claim.

Because I disagree with the majority's conclusion that Lopez failed to exhaust her administrative remedies for her claim that TSU retaliated against her because she filed a pay grievance, and because I would reverse the trial court's judgment and remand this claim to the trial court, I respectfully dissent. Because I agree with the majority's disposition of the other issues involved, I respectfully concur in the remainder of the majority's decision to affirm in part and to reverse and remand in part.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Filed:  April 20, 2012

9